TAYLOR, FARR & COMPANY v. THE WESTERN UNION TELEGRAPH COMPANY, Appellant.

**Sunday Law:** DELAY IN DELIVERING MESSAGE. A load of horses was shipped from Iowa to South Dakota on Friday. While they were in transit through Dakota on Sunday a message engaging stable room was sent. *Held*, it was no defense to an action for delay in delivering said message that the laws of South Dakota prohibited such transportation by rail on Sunday.

**Penal Statutes:** EXTRA TERRITORIAL FORCE. A statute of South Dakota which allows the recovery of fifty dollars in addition to actual damages where a telegram is negligently delayed, provides a statute penalty and will not be enforced in an Iowa suit.

*Appeal from Fayette District Court.*—HON. W. A. HOYT, Judge.

WEDNESDAY, OCTOBER 16, 1895.

This is an action to recover damages by reason of the delay of the defendant in transmitting a telegram from Webster, in the state of South Dakota, to Aberdeen, in the same state. There was a trial by jury, and a verdict and judgment for the plaintiffs. Defendant appeals.—*Modified and affirmed.*

*Cummins & Wright* and *D. W. Clements & Son* for appellant.

*Ainsworth, Hobson & Ainsworth* for appellees.

Rothrock, J.—I.   On the twenty-fourth or twenty-fifth day of March, 1893, the plaintiffs shipped a car load of horses from West Union, in this state, destined to Monango, N. D.   The shipment was in charge of Taylor, a member of plaintiffs' firm.   The car arrived at a transfer near St. Paul on Saturday morning, where the horses were unloaded and fed, and were reloaded at about 6 o'clock in the evening, and proceeded on over the Chicago, Milwaukee & St. Paul Railway to Aberdeen, in South Dakota, where it was necessary to remain over night, and reship from that point on the following morning.   Before reaching Aberdeen, and at a station called Webster, Taylor delivered a telegram to the telegraph operator at the last-named place, which was in these words:   "Webster, South Dakota, March 26, 1893.   Proprietor of Wisconsin House, Aberdeen, South Dakota:   Make room car load horses to-night.   O. E. Taylor."   This dispatch was delivered to the operator, and the cost of transmission paid, in the evening of Sunday, March 26th, and was not transmitted until the next day, and was not delivered at Aberdeen until after 11 o'clock in the forenoon.   Taylor arrived in Aberdeen with the horses after 10 o'clock at night, and found that the stable room had been all taken at the Wiconsin House stables.   He tried to obtain stabling elsewhere, and did not succeed.   He then turned the horses lose in the railroad stock yard, and the claim of the plaintiffs is that, by reason of the condition of the yard and the exposure to inclement weather, one of the horses contracted lung disease, from which it afterwards died.

II.   The question is made by the defendant that the transportation of the horses on Sunday in South Dakota

was unlawful, under a statute of the state which prohibits certain acts to be done on that day. The prohibited acts are set forth in the statute as follows: "(1) Servile labor. (2) Undue travel. (3) Public sports. (4) Trades, manufactures, and mechanical employments. (5) Public traffic. (6) Serving processes. All manner of servile labor is prohibited except works of necessity or charity. All traveling on the first day of the week is prohibited, except such as is performed on foot, or in a conveyance carrying United States mails, or such as is done in case of charity or necessity, or in going to or returning from a funeral or place of worship within a distance of twenty miles; or in visiting the sick and returning, or in moving one's family or household furniture when such removal was commenced on some other day. All trades, manufactures and mechanical employments are prohibited." The court instructed the jury that if they found from the evidence "that the transportation of the horses on Sunday, and the transmitting of the telegram on that day, was necessary in view of the evidence in the case, the fact of so doing constitutes no defense to the action." The instruction was not erroneous. Indeed, we think that the court might have directed the jury as matter of law that the Dakota Sunday law was no defense to the action. The horses were loaded at West Union, in this state, on Friday. They were reloaded and passed through part of the state of Minnesota and into South Dakota, and the shipment was not complete until Sunday night. It would be a most unreasonable rule to establish the doctrine that shippers must take notice of the Sunday laws of distant states, and so time their shipments as to avoid transportation on Sunday. This court has held that a railroad company incurs no other penalty for running trains on Sunday than the fine provided by law, and the liability

for killing an animal by a train on Sunday is to be determined by the same rules as if the accident had occurred on a secular day.    *Tingle v. Railway Co.*, 60 Iowa, 333, (14 N. W. Rep. 320).    See, also, *Schmid v. Humphrey*, 48 Iowa, 652.    In *Sutton v. Town of Wauwatosa*, 29 Wis. 21, it was held that the fact that the plaintiff was driving his cattle to market on Sunday, in violation of a statute, when they were injured by the breaking down of a defective bridge, would not prevent a recovery upon proof of defendant's negligence in constructing and maintaining the bridge.    And this court said some eighteen years ago that it was not prepared to hold that a Sunday statute of Illinois required all trains on railroads leading into that state "to stop at the state line and remain over Sunday."    It follows from what has been said that the same rule should apply to the telegraph company as would be applicable to the railroad company if the horse in question had been injured by the negligence of the latter.

III.    We come now to consider questions of fact in the case.    The defendant had certain office hours in force on Sundays.    It is claimed that the company has the right to make reasonable regulations as to the time during which its office shall be open for the sending and delivering of messages.    It appears that the office hours at Aberdeen on Sunday were from 9 to 10 o'clock A. M. and from 5 to 6'clock P. M.    It is insisted that the evidence shows conclusively that the message was not delivered to the operator at Webster before 6 o'clock P. M.    There is a conflict in the evidence on the question which required it to be submitted to the jury, and the jury found, in answer to a special interrogatory, that the message was delivered to the operator at Webster at about 5:20 o'clock P. M.    We will not review the evidence.

IV.    It is further urged that the evidence that the animal died by reason of the exposure at Aberdeen is

not sufficient to sustain the verdict, and that it does not appear that Taylor made a reasonable effort to procure shelter for the horses during the night. We discover no reasons for reversal upon these gounds. The evidence is quite conclusive that the horses would have been stabled in the barn kept by the proprietor of the Wisconsin House if the telegram had been transmitted that evening, and that Taylor made reasonable efforts to procure shelter elsewhere in the town. The evidence as to the death of the animal from exposure on that night, of course, is not as definite and certain as if the death had been caused by accidental or violent means, such as a collision of trains or the like, but we think it was a fair question for the jury.

V. It appears that there is a statute in force in the state of South Dakota which provides that "every person whose message is refused or postponed    *    *    * is entitled to recover from the carrier his actual damages and $50 in addition thereto." The court instructed the jury that, if it was found that the plaintiffs were entitled to recover, the measure of damage would be the value of the animal and the further sum of fifty dollars. The value of the animal was found to be one hundred and fifty dollars, and the general verdict was for two hundred dollars. It is claimed that the court erred in directing the jury to include the fifty dollars in the verdict. We think this position is well taken. That sum is in the nature of a statutory penalty. The message was sent from one point to another in that state, and the law is well settled that penal laws are strictly local, and cannot have any operation beyond the jurisdiction of the state where enacted. Beach, Priv. Corp. section 150; *State v. Helmer*, 21 Iowa, 370; *Arnold v. Potter*, 22 Iowa, 194; *Graham v. Monsergh*, 22 Vt. 534. In 18 Am. & Eng. Enc. Law, 272, the rule is stated as follows: "An extraterritorial effect will not be given to penal statutes,

whether the penalty provided for is given to the public or to individuals; nor have the principles of interstate comity any application." Counsel for the plaintiffs do not seriously question that this is the law, and the offer is made to remit the fifty dollars in this court.

There are other questions discussed by counsel for appellant, which we do not think demand special consideration. The judgment of the district court will be modified by reducing the amount thereof to one hundred and fifty dollars, and, in view of this modification, the costs in this court will be taxed to the plaintiffs.—*Modified and affirmed.*