### FREEMAN v. THE EXCHANGE BANK OF MACON.

1. Generally, the payee of a bill of exchange, by indorsing it (other-wise in blank) "For deposit to the credit of" himself, retains ownership not only of the bill, but of its proceeds until they are so deposited. The money realized by collecting the bill is, in the hands of a disinterested bank through whose agency the collection was made, subject to garnishment as assets belonging to such in-dorser.
2. Expert testimony is not admissible to aid in the interpretation of an indorsement having a definite legal import and being ex-pressed in terms free from ambiguity.
3. It is settled law that the presiding justice is not bound to charge the jury trying an appeal in a justice's court.

April 20, 1891. By two Justices. Argued at the last term.

Garnishment. Indorsement. Drafts. Evidence. Charge of court. Justices' courts. Before Judge MILLER. Bibb superior court. April term, 1890.

The error alleged is the dismissal of the *certiorari* and sustaining the verdict of a jury rendered in a magistrate's court. In a suit by Freeman against Brown & Company the Exchange Bank of Macon was served with summons of garnishment, and this case arose upon a traverse of its answer. Freeman was a merchandise broker in Macon, and ordered from S. A. Brown & Company a certain lot of corn, and a draft hereafter referred to, Freeman testified, was drawn by Brown & Company for payment for the corn, and the money was furnished by Freeman, and Brown & Company are indebted to Freeman $46.51 shortage, for damage on the contract. The draft was paid through the Exchange Bank, and at the time of the service of the summons of garnishment that bank was in the possession of the funds received on the draft. The draft was a sight draft by Brown & Company on E. A. Ross, agent, Macon, Georgia, payable to their own order, for $136.10 "value received." It bore the following indorsements: "For deposit to the credit of S. A. Brown & Com-

pany"; "Pay Exchange Bank or order for collection, account of National Bank of Kansas City. M. Andmon, Cashier." Over the objection of Freeman (what objection not appearing) the cashier of the Exchange Bank was allowed to testify that the draft came to the Exchange Bank through the Kansas City National Bank for collection; that from an examination of it he would say that the money paid thereon was the property of the Kansas City Bank; that he did not know whether that bank had discounted the draft, but from the paper itself supposed that due credit had been given Brown & Company by that bank, and as soon as such credit was given, it became the property of that bank; and that his evidence was based upon the general banking business of the country, especially that of Macon, Georgia. The magistrate declined to charge the jury on the question of indorsements or any other matter connected with the case, though requested to do so by Freeman. The jury found for the garnishee, and error is assigned in the petition for *certiorari* to such finding; also to the admission of the evidence of the cashier, and to the court declining to charge upon the question of indorsements.

M. R. FREEMAN, by C. L. BARTLETT, for plaintiff.

BACON & RUTHERFORD, for defendant.

BLECKLEY, Chief Justice.

1. An indorsement for collection, or the like, is not a contract of indorsement, but the creation of a power, the indorsee being a mere agent to receive or enforce payment for the indorser's use. *Central Railroad* v. *First National Bank*, 73 *Ga.* 383; Tiedeman Com. Pap. §268; 1 Daniel Neg. Instr. §§698-698(d); 2 Randolph Com. Pap. §§724-5-6-7, 1009; 1 Morse Banks, §217; 2 *Id.* §§ 583, 593; Bolles' Banks & Depositors, §§220, 384(e) *et seq.;* Benj. Chalmers' Bills, Notes & Checks

(2 Am. ed.), 132; Commercial National Bank *v.* Armstrong, 39 Fed. Rep. 684; National B. & D. Bank *v.* Hubbell, 117 N. Y. 384.

A suit is not maintainable by the indorsee against the indorser. White *v.* National Bank, 102 U. S. 658. And see Lee *v.* Chillicothe Bank, 1 Bond, 387.

To sue other parties in order to enforce payment is deemed within the delegated power of the agent; and by reason of the great favor shown by the law to commercial paper, the restricted indorsee is allowed in some jurisdictions to sue in his own name. *Wilson* v. *Tolson,* 79 *Ga.* 137; Boyd *v.* Corbitt, 37 Mich. 52; 2 Randolph Com. Pap. §726; Benj. Chalmers' Bills, Notes & Checks (2 Am. ed.), 133, 149.

The maker of a restricted indorsement can follow the bill or its proceeds over any number of subsequent indorsements, the terms of his indorsement being notice of his title. Elementary works cited *supra;* First Nat'l Bank *v.* Reno Co. Bank, 3 Fed. Rep. 257; Bank of the Metrop. *v.* First Nat'l Bank, 19 *Id.* 301; First Nat'l Bank *v.* Bank of Monroe, 33 *Id.* 408; *In re* Armstrong, *Id.* 405; Commercial Nat'l Bank *v.* Hamilton, 42 Fed. Rep. 880. The last case is criticised from the standpoint of bankers, but only with reference to transmitting the proceeds of collection from the collecting bank to the intermediary through whom the bill was received. The expert opinion seems to be ·that transmission according to custom, by correspondence and proper entries of debit and credit founded thereon, the entries being made *after* collection, will serve commercially, and therefore legally, as the equivalent of paying over the money or forwarding it by mail or express; and consequently that transmission by such entries, each bank making the appropriate entry for itself, will discharge the collecting bank. See 45 Banker's Magazine, 241; 4 Banking Law Journal, 3. The learned United

States circuit judge who decided the case which is thus criticised took a different view.

The bill of exchange upon which the question in the present case arises was drawn at Kansas City, Mo., by S. A. Brown & Co. upon F. A. Ross, Agent Central Railroad, Macon, Ga., payable at sight to their own order. It was indorsed by them thus : "For deposit to the credit of S. A. Brown & Co." Following this indorsement was another in these terms : "Pay Exchange Bank, or order, for collection account of National Bank of Kansas City. M. Andmon, Cashier." The bill, after its receipt for collection under the latter indorsement, was paid to the Exchange Bank at Macon, and thereupon, whilst that bank had possession of the money, a garnishment, issued at the instance of Freeman as a creditor of S. A. Brown & Co., the drawers and payees of the bill, was served upon it. No facts are in evidence as to the actual ownership of the money at the time the garnishment was served except the bill itself and the indorsements thereon. The legal import of the first indorsement, that of S. A. Brown & Co., being that the ownership of the bill was retained by them, the terms of the second indorsement, that made by the cashier of the National Bank of Kansas City, are of no consequence. As the indorsements stand, there is no express link of connection between them—no written link naming or constituting the National Bank of Kansas City a holder of the bill for any purpose whatever. But in virtue of being an actual holder, that bank would have the right to fill up the first indorsement so as to make it read thus: "Pay to the National Bank of Kansas City, or order, for deposit to the credit of S. A. Brown & Co." There might be other terms in which the full indorsement which that bank would be authorized to supply could be expressed; but on the state of facts before us, that bank would have no

authority to insert any terms which would vary sub-
stantially the legal import of the original indorsement,
or render it other than a restrictive indorsement con-
fining ownership of the bill and its proceeds to S. A.
Brown & Co.   Lee *v.* Chillicothe Bank, 1 Bond, 383.
The proceeds would be impressed with this owner-
ship until they were actually so deposited.   The gar-
nishment fastened upon them before this did or could
take place, for the money was in the hands of the col-
lecting bank, the Exchange Bank of Macon, when the
garnishment was served.   The agency created by the
owners of the bill by means of their indorsement had
not been fully executed.   The Kansas City bank was
still the immediate agent under them, and the Macon
bank was a sub-agent under it.   The latter held the
money as a bailee for the ultimate use and benefit of the
owners.   It could discharge itself by transmitting to
the Kansas City bank at any time before the garnish-
ment was served, but could not do so after such service,
the fund being then *in gremio legis.*

There being in evidence no facts extrinsic to the bill
itself and its indorsements to throw light upon the
question of title, we are not to be understood as hold-
ing that such facts might not exert a controlling influ-
ence on the question.   Indeed, there is authority for
giving them such effect when duly proved.   A deposit
of paper in bank by a customer, he indorsing it "For
deposit," may operate to clothe the bank with title
under certain circumstances.   National Commercial
Bank *v.* Miller, 77 Ala. 168; 2 Morse on Bank. §577.
But the general rule is, that by a restrictive indorse-
ment the depositor retains the title.   Bolles on Banks
and Depositors, §220.

2. The indorsement to be construed being free from
ambiguity and having a clear and definite legal mean-
ing, expert testimony to aid in its interpretation was

v 87-4

not admissible. The duty of construing such an indorsement, by its own terms and without the opinion of witnesses, devolves upon the court, or upon the jury, the case being on appeal in a justice's court. Mr. Cabaniss, the cashier of the bank garnished, deposed to no fact which actually transpired in relation to this particular indorsement, but only gave his opinion, founded upon his expert knowledge, as to what had probably transpired between the Kansas City bank and the payees of the bill, and as to the legal effect of such an indorsement. His opinion was wholly irrelevant and inadmissible. But as no ground of objection to his evidence is stated in the petition for *certiorari*, we cannot say that the superior court ought to have sustained the *certiorari* because of this error committed by the justice's court.

3. That it is not the legal duty of the justice of the peace presiding over a jury trial in his court to instruct the jury as to the law of the case, has been heretofore ruled more than once. *Johnson* v. *Nelms*, 21 *Ga.* 192; *Adams* v. *Clark*, 64 *Ga.* 648; *Bendheim* v. *Baldwin*, 73 *Ga.* 594.

But inasmuch as the jury, under the evidence before them, erred in finding in favor of the garnishee, the *certiorari* should have been sustained for that reason, and the superior court erred in not sustaining it.

*Judgment reversed.*