2744. WESTERN UNION TELEGRAPH CO. v. FORD.

1. While damages for mental and physical suffering alone, disconnected from any physical injury or pecuniary loss, can not be recovered from a telegraph company for negligence in failing to transmit and deliver a telegraphic message with due diligence, yet the company is liable for any physical or bodily injury or pecuniary loss, directly traceable to its negligent conduct as the proximate result thereof; and mental and physical suffering resulting from the bodily injury may be considered as an element of damages.

2. Under the allegations of the petition in this case, it was a question of fact, for the jury to determine, whether the negligent failure of the telegraph company to transmit and deliver a telegram to the physician, whereby he was prevented from earlier attendance and earlier medical or surgical treatment, was the proximate cause of the loss of the plaintiff's eye.

DECIDED JANUARY. 17, 1911.

Complaint; from city court of Moultrie—Judge McKenzie. May 14, 1910.

Mrs. Ford sued the Western Union Telegraph Company for damages resulting to her from negligent delay in delivering a telegram. The allegations of the petition, in substance, make the following case: The plaintiff lived in the country, about fifteen miles southeast of Moultrie and five or six miles west of Barney, in Brooks county, Georgia. She was suffering "from purulent conjunctivitis, there being symptoms of iritis." For this affection of the eye she was under the treatment of a specialist, who resided in Moultrie. This specialist informed the plaintiff and her husband that should iritis set in, a corneal ulcer would form on the eye, and, unless promptly stopped, would spread to the vision and cause the loss of the eye, and described to the plaintiff and her husband the premonitory symptoms of iritis so she would know when to send for him promptly if iritis should set in. Early on the morning of July 5, 1909, plaintiff felt in her diseased eye the symptoms of corneal ulcer as described by the specialist. She immediately caused her husband to send a message by hand, through the country, to Dr. Odum at Barney, Georgia, with a request that he send the message to the specialist, instructing him to go to her residence. There being no telegraph office at Barney, this message was telephoned from Barney to Quitman, Georgia, and there delivered to the defendant company, this being the usual way that messages are transmitted from Barney. Between eight and nine o'clock on the morning of

July 5, 1909, the message was delivered by Dr. Odum to the defendant at Quitman, and was as follows: ",Barney, Georgia, July 5. Dr. Jerkins, Moultrie, Georgia. Come out to J. M. Ford's place. [Signed] Dr. Odum." The place referred to in the dispatch was the residence of the plaintiff, and the Dr. Jerkins to whom the dispatch was addressed was the specialist who was treating the plaintiff. This telegram could have been delivered, by ordinary diligence, within fifteen minutes after the receipt thereof, Moultrie being about fifty miles from Quitman by wire. The telegraph company negligently failed to deliver the message to the addressee until 10.30 o'clock on the morning of July 6, 1909, a delay of more than twenty-five hours. Had the message been promptly delivered, Dr. Jerkins "could and would have immediately gone to petitioner's house, according to the previous understanding and arrangement made between petitioner and Dr. Jerkins, and he would have at once stopped the spread of the ulcer before it reached the vision of the eye, and would have saved petitioner's said right eye." When he received the telegram he went to the plaintiff's home and at once arrested the progress of and healed the ulcer, yet it had in the last twenty-four hours immediately preceding his arrival so spread that the vision of the right eye was destroyed, thus making it necessary to have the right eye removed in order to prevent the loss of the other eye, and the right eye was accordingly removed during the latter part of August, 1909. Dr. Jerkins is a well known specialist, residing in the city of Moultrie. His residence and office are within 400 yards of the defendant's office in Moultrie, and he was at his office and residence all of the day of July 5, 1909, and on July 6 until after the receipt of the message. Dr. Jerkins is well known to the agent of the defendant company in Moultrie, and the message could very easily have been delivered to him on the morning of July 5 in ample time for him to have gone to petitioner's house and stopped the trouble with the eye. Except for the fact that the petitioner was relying on the defendant to promptly transmit the message, she could and would have made other arrangements to get Dr. Jerkins to her in time to have stopped the ulcer before it had destroyed the vision of her eye. Plaintiff charges that the defendant company was guilty of gross negligence in not delivering the message, and in delaying its delivery for over twenty-four hours after its receipt by the company at Moultrie, and that the loss of

her eye was due directly to this negligence of the defendant, for which it is liable. She alleges that she is entitled to recover damages from the company resulting from its gross negligence, as specifically alleged, because of the severe mental and physical pain she suffered from the progress of the ulcer, and the mortification that she will suffer from the loss of the eye during her entire life. She also alleges that the loss of the right eye has weakened and damaged the other eye, and she is liable to become permanently blind, and she will suffer great mental anguish in apprehending this result. She alleges that her ability to earn money and to work has been lessened $500 per year.

By an amendment to the petition. the plaintiff alleged, that the message to Dr. Jerkins was delivered to the defendant company at Quitman, Georgia, between nine and ten o'clock on the morning of July 5, 1909; that the ulcer reached the point and condition by and from which the vision of the eye was destroyed after twelve o'clock on the night of July 5, 1909; and had the message been delivered to Dr. Jerkins at any time prior to eight o'clock on the afternoon of July 5, 1909, he would have responded to the telegram and gone to plaintiff's home, and have stopped the progress of the ulcer before it reached petitioner's eye, and would have saved petitioner's eye.

The defendant filed a demurrer, general and special, which was overruled, and the defendant excepted.

*Dorsey, Brewster, Howell & Heyman, W. A. Covington,* for plaintiff in error. *Shipp & Kline,* contra.

HILL, C. J. (After stating the foregoing facts.)

The writ of error challenges, on two grounds, the correctness of the judgment overruling the demurrer. First, the suit is to recover damages for mental anguish and physical pain not based upon or resulting from the wrongful commission of an overt act, or an affirmative tort; and, under the rule of law in this State, damages of this character are not recoverable. Second, the damages alleged are not the proximate result of the negligence complained of, are speculative and remote, only the imaginary or possible result of the tortious act, and other and contingent circumstances preponderated largely in causing the injury; and damages of this class are universally held not to be recoverable against the wrong-doer.

1. The decisions of this country are in hopeless conflict on the right to recover damages for mental and physical suffering inde-

pendent of any physical injury or pecuniary loss. Many courts hold that such damages are recoverable, and many hold exactly the reverse. The rule as declared by the Supreme Court of this State in *Chapman* v. *Telegraph Co.*, 88 *Ga.* 763 (15 S. E. 901, 17 L. R. A. 430, 30 Am. St. R. 183), and in *Seifert* v. *Telegraph Co.*, 129 *Ga.* 181 (58 S. E. 699, 11 L. R. A (N. S.) 1149, 121 Am. St. R. 210), is that mental anguish and physical pain resulting from mere negligence, unaccompanied by any injury to the person or pecuniary loss, can not be made the basis of an action for damages. This seems to be the general rule of the courts in England. See Lynch *v.* Knight, 9 H. L. Cas. 577; Hobbs *v.* London & S. W. R. Co., L. R. 10 Q. B. 123. Both the *Chapman* case and the *Seifert* case were suits to recover damages against the telegraph company for negligent delay in failing to transmit and deliver messages, and the damages claimed were confined to those arising from mental and physical suffering independently of any physical injury or pecuniary loss. In both these cases the rule is qualified by the limitation that the damages not recoverable are those from pain and suffering alone, disconnected from any physical injury or pecuniary loss. It is distinctly stated in the *Chapman* case especially that where there is a physical or bodily injury or pecuniary loss resulting from negligent conduct, accompanied by mental and physical suffering, damages are recoverable, and that the suffering flowing from the physical injury, and which is simply the effect thereof, may be considered as an element of damages. It is insisted that this is true only when the damages result from the wrongful commission of an "affirmative or active tort." Cases are cited in which the Supreme Court allowed the recovery of damages for wounded feelings, mental and physical, based upon overt acts of physical injuries, and the effort is to restrict the right to recover damages to torts of this character. The decisions make no such restriction, and neither logically nor legally can such a limitation be sustained. Certainly the *Chapman* and *Seifert* cases, the leading cases cited, do not make this restriction, and this court will not extend by liberal construction the rule announced in those cases. Whatever may be the difference of opinion as to the right to recover damages for mere mental anguish or physical pain, it is universally conceded that this right is given in every case where, in addition to the mental and physical suffering, there is also an injury to the body, from which the suffering results; and

where this tangible effect of a tort exists, the intangible or senti-mental result of suffering, either mental or physical, enters into the question of damages as a component part.  Nor does it make the slightest legal difference whether the bodily injury is inflicted by an act of commission, or proximately results from negligent conduct. *Sappington* v. *Atlanta & West Point R. Co.,* 127 *Ga.* 179 (56 S. E. 311).  Tort is an actionable wrong, and may result from an inten-tional or wilful act, or from negligence, just as a crime may be intentionally committed or results from criminal negligence.  "A tortious act consists of the commission or omission of an act by one without right, whereby another receives some injury, directly or in-directly, in person, property, or reputation."  8 Words & Phrases Judicially Defined, 7007.  The allegations of the petition in this case show that the defendant company was guilty of a tort, in the breach of its public duty as a public-service corporation, in not transmitting and delivering with reasonable and due diligence a telegram which it had undertaken to deliver, and it is charged that this negligent omission to perform its duty caused the plaintiff a great physical injury, in the loss of an eye, accompanied with severe mental and physical suffering, and that this injury and suffering would have been prevented if the telegraph company had performed the duty it owed to the plaintiff, by a prompt delivery of the tele-gram.  If these allegations are supported by evidence, the right to recover all proximate damages would be established.

2.  It is well settled that it is the duty of telegraph companies to transmit and deliver messages intrusted to them without unrea-sonable delay; and in failing to do so they become liable for all damages resulting therefrom.  Cooley on Torts, 646.  It is only in the application of the rule to the facts of the particular case that any doubt can arise.  In this case it is insisted, that even conceding negligence, the physical injury complained of was not the direct and proximate result of the wrong; that the loss of the eye was not caused by the negligent conduct of the defendant; that it was due to the diseased condition of the eye, in the origin and continuance of which the defendant's conduct was in no sense responsible, how-ever negligent, it being fair to assume that the disease would have progressed to its culmination in the destruction of the eye if there had been no telegraph company or no message.  But the company did exist, and existed for the very purpose of transmitting informa-

tion from one to another, and in this case undertook to convey the information to the physician that his services were promptly needed; and if the eye would have been saved had the services called for been rendered, its loss was proximately due to the negligence of the telegraph company in not promptly conveying the message to the physician. Unquestionably the facts alleged show that the oculist would have reached his patient before the disease had progressed so far as to destroy the eye, if the telegram had been delivered to him in time. The allegation is positive that he "could and would" have saved the eye if he had reached the patient at any time within the twelve hours after the telegram had been delivered to the company's agent at Quitman. The last question is the only one that is really issuable under the allegations. The solution of this issue would depend largely upon the probative value of expert testimony. Expert evidence in a proper case is competent. Civil Code of 1895, § 5287. Whether sufficient to prove the hypothesis claimed is not a question of law, but of fact for the jury. Of course, there are cases where the injury is so remotely connected with the wrong that no issue is presented, but unless such is the case, the jury must solve the doubt and declare the truth. In determining issues dependent upon expert testimony, no greater degree of certainty is required than in other cases. The science of medicine and surgery is not an exact science. It has not yet reached that standard of perfection where those learned in its mysteries can say, to a mathematical certainty, what will happen in given cases as the result of skill and medicinal remedies. It is all a question of reasonable probability, and not of absolute verification. But the experienced and skilful physician can in many cases arrest the progress of disease, and can state with reasonable probability whether a particular disease can be arrested. The expert opinion of such a witness is something more than mere conjecture. It is entitled to weight, and is declared in many cases of sufficient probative value to produce conviction in matters of the gravest import. How can it be fairly said that the skilful oculist would not have arrested the progress of the disease and saved the patient's eye? Why is not the hypothesis that he "could and would" have saved it as reasonable as the hypothesis that he would not? If reasonably probable that he could have saved the patient's eye if he had reached her in time, then the negligence of the telegraph

company in preventing him from reaching her in time was the proximate cause of the loss of the eye.

"Negligent delay of five hours in the delivery of a telegraphic message reading 'Bravo is sick; come and fetch Miller at once,' when the telegraph company knows that Bravo is a valuable horse and that Miller is a veterinary surgeon, is the proximate cause of the death of the horse, where it is shown that had the surgeon reached the horse five hours earlier his chances of recovery would have been greater, and that in all reasonable probability he would have been saved." Hendershot v. Western Union Tel. Co., 106 Iowa, 529 (76 N. W. 828, 68 Am. St. R. 313). In the course of the opinion in that case it is declared: "In the nature of things, reasonable probability as to the cause of the death of the horse is the most that can be proven in a case like this; and if the evidence discloses facts which show such reasonable probability as convinces the jurors as to the cause of death, they may surely act upon it, though they must not indulge in conjecture, speculation, or guesswork." In Gores v. Graff, 77 Wis. 174 (46 N. W. 48),—an action against a surgeon for negligence which caused the death of his patient, it is held: "There can be no recovery, unless it is reasonably probable that the patient would have lived had the doctor treated her properly, and the existence of such reasonable probability must be proved; that is to say, facts and circumstances must be proved sufficient to bring conviction to a reasonable mind, without resorting to mere conjecture, or uncertain and inconclusive inferences or bare probabilities, that the surgeon's neglect of his duty was the proximate cause of the death of his patient." This decision is approved in Kerr v. Keokuk Waterworks Co., 95 Iowa, 509, 514 (64 N. W. 596). See also, to the same effect, Taylor v. W. U. Tel. Co., 95 Iowa, 740, 744 (64 N. W. 660); Western Union Tel. Co. v. Church, 3 Neb. Unof. 22 (90 N. W. 878, 57 L. R. A. 905); Peterson v. Chicago etc. R. Co., 38 Minn. 511 (39 N. W. 486); Central Union Tel. Co. v. Swoveland, 14 Ind. 341. "Where the testimony of a physician tends to show that a surgical operation might have been avoided had he reached the patient in time, it is not error to submit to the jury the question as to whether or not the failure of a telegraph company to properly transmit a message, whereby the physician was prevented from earlier attendance, was the proximate cause of the injuries resulting from such operation."

Western Union Tel. Co. *v.* Morris, 83 Fed. 992 (28 C. C. A. 56). Many other cases might be cited, all to the same effect, that the question of proximate cause, where damages are claimed for the negligence of a telegraph company in transmitting and delivering messages, is an issue for the jury.

There must be some direct and proximate connection between the negligence or wrong done and the physical injury suffered. This causal connection must be proved by facts or opinion of experts to be reasonably probable, and must not depend merely on conjecture or guesswork. The case of *Seifert* v. *Telegraph Co.,* supra, is relied upon by plaintiff in error to support the contention that the damages claimed in the present case are too remote and conjectural. It can not be denied that some expressions in the opinion would seem to warrant this conclusion. But it has been wisely said that "the language of an opinion is an uncertain guide when divorced from the facts." And in the *Seifert* case the damages claimed were for physical pain alone, independent of any physical injury or pecuniary loss, and the court, following *Chapman* v. *Telegraph Co.,* supra, held that there could be no recovery, there being no legal distinction between mere physical pain and mental anguish. The decision in the *Chapman* case is not based upon the assumption that there could be no causal connection between mental suffering and negligent delay in transmitting and delivering a telegram, but is based upon the theory that such damages are sentimental, vague, and shadowy, and that there is no standard by which such injury can be justly compensated or approximately measured. In the *Seifert* case the learned jurist who wrote the opinion concluded that the facts of that case were not sufficient to show that the damages claimed were the proximate result or consequence of the negligence alleged. It was not intended to announce, as a general rule to which there was no exception, that under no circumstances could there be a causal connection between physical suffering accompanied by bodily injury, and the negligent conduct of a telegraph company in failing to transmit and deliver a message. And as before stated, this court will not extend the doctrine of the *Chapman* case or the *Seifert* case beyond the demands of the express terms of the decisions, in the light of the particular facts. The action in the instant case is one sounding in tort. It is one to recover damages for a failure to exercise due

care in the performance of a public duty which the law imposed upon the telegraph company. The contract is set out simply by way of inducement as showing the relations between the parties. The general rule for damages for a breach of contract, first formulated in the old case of Hadley *v.* Baxendale, 9 Ex. 341, and which has been universally adopted, while in some respects applicable to cases ex delicto, has special application to breaches of contract and damages resulting therefrom. In actions of tort the rule is broader. In these cases the rule is that the injured person shall be compensated for his injuries, and this includes damages not only for such injurious results as proceed immediately from the tort which is the basis of the action, but consequential damages as well. In an action to recover damages for a breach of contract no damages can be recovered save those which may reasonably be supposed to have been contemplated by the parties as a probable result of the breach of the contract; but recovery in tort is not thus limited. "It is the unexpected, rather than the expected, that happens in the great majority of cases of negligence," and the party who commits an "active tort," or who is guilty of culpable negligence from which injury results, is liable for all the damages capable of being estimated, although not contemplated as a probable result of the tortious act or the negligent conduct.

After a most careful consideration of the questions made and the authorities, we are clear that the court did not err in overruling the demurrer to the petition. The allegations of fact therein, if proved, would warrant a recovery.        *Judgment affirmed.*