3808.  CRONHEIM *v.* POSTAL TELEGRAPH-CABLE CO.

1. Where a check is indorsed to a bank "for collection and credit for deposit" to the account of the payee, the bank is the agent of the payee to collect, and title to the check does not pass to the bank, in the absence of an agreement to that effect, evidenced otherwise than by the language of the indorsement.
2. Such an agency may be revoked by the payee at any time before collection, and may be terminated by instructing the bank upon which the check is drawn to withhold payment.
3. Following the decision in *Schofield Manufacturing Co.* v. *Cochran,* 119 *Ga.* 901 (47 S. E. 208), where the owner of a check delivers it to a bank for collection, and, before the proceeds are remitted, the bank fails and is placed in the hands of a receiver, the owner is not entitled to priority over the general creditors of the bank.
4. The probability that the drawer of a check given in settlement of a debt will request the drawee to withhold payment, when instructed so to do by the payee, and that the drawee will comply with such request, is so legally certain as to support an action for damages against a telegraph company for failing to deliver a message from the payee to the drawer, containing such an instruction.
5. The petition set forth a cause of action, and should not have been dismissed on demurrer.

DECIDED MARCH 6, 1912.

Action for damages; from city court of Atlanta—Judge Reid. September 19, 1911.

H. Cronheim brought suit against the telegraph company, mak-
ing in his petition substantially the following allegations: Plaintiff
was general superintendent of the insurance department of the su-
preme lodge of the Knights of Pythias for the State of Georgia,
and had an office in the city of Atlanta, which was under the con-
trol of and maintained by the supreme lodge of the Knights of
Pythias. On December 20, 1907, he received from Carlos S. Hardy,
general secretary of the supreme lodge of the Knights of Pythias
in the city of Chicago, Ill., a certain voucher-check, in the follow-
ing words and figures, to wit:

"Supreme Lodge Knights of Pythias, Insurance Department.
Voucher-Check No. H 1533.   Chicago, Ill., 12/18, 1907.

To H. Cronheim, Address, Atlanta, Ga.

$1220.

This voucher-check is payable in current funds at the First
National Bank of Chicago, when receipted in accordance with direc-
tions below.

Advanced on a/c....................No...........$1220.00

Approved for payment: Carlos S. Hardy, General Secretary.

Countersigned: Sam'l O. Smart, Auditor.

Audit No. 1070.

Received at Atlanta, Ga., (Date) Dec. 20, 1907, twelve hundred
twenty and no/100 dollars ($1220.00), in full payment of the above
account.

Account No. 5

Drawn W. O. P.                              H. Cronheim.

Before signing please write place and date above.

Directions: This receipt must be dated and signed by the party
in whose favor the voucher-check is drawn, and in exact form as
given above.

(Endorsements on back of voucher-check.)

No. H. 1533.

Supreme Lodge Knights of Pythias.   Insurance Department.
Date 12/18-07.   $1220.00

Payable at The First National Bank, Chicago, Ill.   No protest.
The Neal Bank, Atlanta, Ga.

Paid through Chicago Clearing-house 2-3 Dec. 23, '07, to Central
Trust Company of Illinois.

Pay to any bank or bankers, or order. All other endorsements guaranteed. Dec. 20-07. The Neal Bank."

On December 20, 1907, the plaintiff deposited the voucher-check in the office of the Neal Bank in the city of Atlanta, "for collection." In the usual and ordinary channels the check proceeded from the office of the Neal Bank to the Central Trust Company of Illinois, in Chicago, for presentation to the First National Bank of Chicago for payment. On December 21, 1907, which was Saturday, the Neal Bank failed and closed its doors for business. On December 23, at 7.55 a. m., the plaintiff filed with the defendant company in Atlanta a telegram of which the following is a copy: "Atlanta, Ga., December 23, '07, to Carlos S. Hardy, 1220 Manhattan Building, Chicago, Ill. Stop payment check twelve hundred twenty-two dollars sent Dec. statement have written. [Signed] H. Cronheim." It is alleged that this telegram referred to the voucher-check hereinbefore mentioned, and was designed to cause the addressee to instruct the First National Bank of Chicago to refuse payment of the check when presented, on account of the failure of the Neal Bank. At the time this message was left with the defendant's agent in Atlanta, attention was urged by the plaintiff to its importance, and to the consequences that would be suffered by him in the event of a failure to transmit it promptly, and the agent informed petitioner that it would reach its destination in about thirty minutes. The check in question was presented to the First National Bank at Chicago by the Central Trust Company of Illinois at 12 o'clock, noon, December 23, 1907, and was paid through the clearing-house of Chicago, the check having been indorsed by the Neal Bank to the Central Trust Company. The telegram was not delivered to Carlos S. Hardy until 2.05 p. m., December 23, 1907, having been negligently delayed in delivery by the defendant. Carlos S. Hardy, the general secretary, was in his office at the address referred to in the telegram, during the whole of December 23, 1907, and "would have stopped payment of this said voucher-check by the First National Bank of Chicago if he had received said petitioner's message at any time prior to the receipt of the same, to wit, December 23, 1907." It was further alleged that there was an error in transmission of the message, both as to the name of Carlos S. Hardy and as to the place for delivery of the message, as well as in the name of the sender, and it is

averred that these errors in transmission contributed to the delay in delivery. Plaintiff was individually responsible to the supreme lodge of the Knights of Pythias for the safe-keeping and distribution of all funds placed in his hands by the supreme lodge. He was responsible for the collection, safe-keeping, and proper distribution of the check, and no loss ensued to the supreme lodge by reason of the placing of the check in the Neal Bank for collection and the failure of the defendant to promptly deliver the telegram, but the loss, as heretofore set forth, was sustained by the plaintiff individually. The Neal Bank having become insolvent, the check passed into the hands of the receivers of the bank, and, on account of the gross negligence in failing to deliver the message, the proceeds of the check were paid to the order of the Neal Bank, when, by ordinarily prompt and careful transmission and delivery of the message, payment could have been legally prevented; and plaintiff was forced to make the check good to the supreme lodge of the Knights of Pythias. Plaintiff has received from the receivers of the Neal Bank three payments on the check, as follows: March 20, 1908, $244; October 20, 1908, $244; November 20, 1909, $183, making a total of $671. He sues for the difference between this sum and the amount of the voucher, plus interest, claiming the right to recover the sum of $862.32. On January 23, 1908, within sixty days from the date of the injury and damage complained of, the plaintiff filed his claim against the defendant for the sum of $1,220, alleging the same to be due him as damages for the negligent transmission and delivery of his message, and caused said claim to be referred to the agency of the defendant in the city of Atlanta, the agency which had received the message for transmission and delivery, and the defendant refused to pay the amount claimed, or any part thereof.

The defendant interposed a demurrer to the petition, upon the following grounds: (1) because no cause of action is set forth; (2) because it does not appear how the plaintiff became legally liable to the supreme lodge of the Knights of Pythias for the proceeds of the voucher; (3) because it appears that the plaintiff had a preferential claim against the receivers of the Neal Bank, and that sufficient funds went into the hands of the receivers to pay his claim in full; (4) because it appears from the petition that the right of action is not in the plaintiff. The defendant specially demurred to the averment that the plaintiff was general superintendent of

the insurance department of the supreme lodge of the Knights of Pythias, and had an office in the city of Atlanta, which was maintained and controlled by the supreme lodge, and also to the allegation that the telegram had been negligently held by the defendant and not delivered to the addressee until 2.05 o'clock p. m., upon the ground that these allegations were impertinent. The defendant demurred also on the ground that the allegations of the petition did not show how and in what manner the plaintiff became legally responsible for the proceeds of the collection of the check; the averment in reference to this matter being alleged to be vague, indefinite, and uncertain. Special demurrer also raised the point that the nature, character, and details of the claim alleged to have been filed with the defendant were not set forth.

In response to the demurrer the plaintiff amended his petition as follows: The check described in the petition was issued to the plaintiff "as an advance on account of the current expenses of his office" as general superintendent of the insurance department of the supreme lodge, and was issued for the purpose of paying "various commissions and compensations due to him and to various and divers secretaries of local branches of the insurance department of the supreme lodge Knights of Pythias in the State of Georgia, under his employment and supervision, for soliciting applications from members of the order of Knights of Pythias for insurance in said department, said voucher-check having been so remitted and entrusted to him in his individual name and capacity by said insurance department, supreme lodge Knights of Pythias, for the purposes aforesaid." Plaintiff sustained individual loss by reason of the negligence of the defendant, both on account of being a trustee and distributor of the voucher-check for the purpose above mentioned, and because of his ownership thereof, by reason of which he was compelled to make the same good to the insurance department of the lodge. The original petition alleged that the voucher-check was deposited in the Neal Bank for collection. By amendment it was alleged that the check was deposited "for collection and credit to his individual account with said Neal Bank for deposit."

The trial judge passed the following order: "The amendment makes it appear that the check was deposited for credit to the plaintiff's private account subject to his check, and it thus became

the property of the bank, and he had no right to stop its payment. He sues only for actual damages. The general demurrer is sustained and the plaintiff's petition dismissed, with judgment against the plaintiff for" costs. The plaintiff excepted.

*Leon C. Greer,* for plaintiff.

*Anderson, Felder, Rountree & Wilson,* for defendant.

POTTLE, J. (After stating the foregoing facts.)

1, 2. When the receipt was signed by the plaintiff the voucher became an order on the Chicago bank for the sum expressed in its face. The voucher recited upon its face that it was payable in current funds of the bank when the receipt was signed. When the receipt was signed the voucher had all of the incidents of a check drawn in the usual form upon the order of the payee and indorsed by him. It was the right of the payee to divest himself of the title to the voucher by an absolute sale, or he could appoint an agent to collect and remit to him the proceeds. Ordinarily banks do not buy the checks of their customers drawn on other banks, but there is no legal objection to their doing so. Generally checks or drafts of this kind are accepted only for collection. The customer may be credited with the paper, or he may be credited with the amount of the check as cash (*Bailie* v. *Augusta Savings Bank,* 95 *Ga.* 277, 21 S. E. 717, 51 Am. St. R. 74); but even in the latter case it is well settled that the bank does not forfeit the right to charge the amount back to the customer if the check is dishonored. 1 Morse, Banks and Banking (4th ed.), § 187. Sometimes, as a matter of accommodation to customers, banks do credit as cash the amount of foreign checks and permit the depositor to draw immediately against the credit; but this is a mere matter of custom or practice, which can of course be departed from at any time and in any case. Generally title to a particular check deposited in a bank does not pass out of the depositor until the proceeds are collected. The question, like all other questions of contract, depends upon the intention of the parties. If they intend title to pass, and by apt words enter into an agreement to this effect, such a contract will be given legal efficacy. But the courts will rather presume that simply the relation of principal and agent was created, in the absence of clear evidence that the parties intended that the relation of debtor and creditor should arise immediately upon the deposit of the check. Where a draft or check

is deposited "for collection," it is clear that the title does not pass. *Central Railroad* v. *First National Bank, 73 Ga. 383*; *Neal* v. *Gray, 124 Ga. 511* .(3), (52 S. E. 622). Where it is deposited generally, upon an indorsement in blank, and nothing more appears, it will be presumed that the deposit was made in the usual course of business, and that the depositor intended to appoint the bank as his agent to collect the proceeds and deposit them to his credit. Here the voucher was left "for collection and credit to his individual account with said Neal Bank for deposit." There is no averment of any agreement or understanding other than that which may be implied from this language. There is no allegation that at the time the voucher was left with the bank the plaintiff was credited with the amount of it as cash, or that there was any agreement that he was to be allowed to draw against the voucher, or any previous course of dealing by which he had the right to do this, or that he actually did so. We are, therefore, confined to the language of the averment above quoted, to ascertain the intention of the parties. So dealing with the case, we are very clear that title did not pass from the plaintiff. The evident meaning of the averment is that the plaintiff appointed the bank his agent to collect, and that *when collected* the proceeds should be deposited to his individual credit. This being so, the plaintiff had the right to control the check and stop its payment. The agency was revocable and could be terminated at the plaintiff's pleasure. Indeed, the insolvency of the bank before the collection was actually made terminated the agency and the bank's right to proceed. 5 Cyc. 512. But unless terminated, the agency continues until the collection is made, after which the relation of debtor and creditor arises. In *Freeman* v. *Exchange Bank, 87 Ga. 45* (13 S. E. 160), a check was indorsed "for deposit to the credit of" the indorser. It was held that the proceeds of the check in the hands of a disinterested bank through whose agency the collection was made were subject to garnishment as assets of the indorser. We quote from the opinion of Mr. Chief Justice Bleckley: "There being in evidence no facts extrinsic to the bill itself and its indorsements to throw light upon the question of title, we are not to be understood as holding that such facts might not exert a controlling influence on the question. Indeed, there is authority for giving them such effect when duly proved. A deposit of paper in bank by a customer, he indorsing it 'For deposit,'

may operate to clothe the bank with title under certain circumstances. National Commercial Bank *v.* Miller, 77 Ala. 168; 2 Morse on Bank. § 577. But the general rule is, that by a restrictive indorsement the depositor retains the title. Bolles on Banks and Depositors, § 220." In *Fourth National Bank* v. *Mayer, 89 Ga.* 108 (14 S. E. 891), it was held: "Where a regular customer of a bank deposits with the bank his draft payable to his own order and indorsed, 'For deposit to the credit of' the drawer, and the same is entered to his credit on the books of the bank and forwarded by the bank to another bank for collection, the drawer, by the course of dealing, having the right to check against such deposit and in fact checking against it, and his checks being honored, the title to the draft passes to the first bank, and when collected by the second, the proceeds are not subject to garnishment at the instance of a creditor of the drawer, such proceeds being the property, not of the drawer but of the first bank. The case is distinguishable from *C. R. R.* v. *First Nat. Bank,* 73 *Ga.* 383, and *Freeman* v. *Exchange Bank,* 87 *Ga.* 45 [13 S. E. 160]." We are of the opinion that the judgment of dismissal can not be sustained upon the ground upon which it was placed by the learned trial judge.

3. It is contended that the demurrer was rightly sustained because, under the facts alleged, the plaintiff was a preferred creditor of the Neal Bank, and could have avoided any loss by following the fund in the hands of the receiver; that the proceeds of the voucher which came into the hands of the receiver was a trust fund, and that a court of equity would have awarded it to him as such. We need not consider whether a wrong-doer, like the defendant is admitted by the demurrer to be, can raise such a question. There is force in the suggestion that one who has wrongfully occasioned another damage ought not to be heard to say, after the damage is done, that the injured party should have sought relief in another proceeding and against another party. Whether the general rule that an injured party is bound to lessen his damage would make permissible a defense of this nature we need not inquire. In the celebrated English case of Knatchbull *v.* Hallett, 13 Ch. D. 696, the old equity rule that either the property misappropriated by a faithless agent or its proceeds must be capable of identification, before equity would impress it with a trust in favor of the party wronged, was enlarged and extended so as to apply to a case where money held by a person

in a fiduciary character was paid by him to his account at his banker's; it being held that in such a case the owner of the money could follow it and have a charge on the balance in the banker's hands. This modern doctrine has been followed by some of the American courts and·applied to a fund collected by an insolvent bank as agent for another. See 5 Cyc. 512; 3 Am. & Eng. Enc. Law (2d ed.), 805; 2 Morse, Banks & Banking (4th ed.), § 590; State *v*. Edwards, 61 Neb. 181 (85 N. W. 43, 52 L. R. A. 858). But the rule is settled otherwise for us by the Supreme Court. In *Tiedeman* v. *Fertilizer Co.*, 109 *Ga.* 661 (34 S. E. 999), it was held: "Where the owner of notes placed the same in the hands of another for collection, and the bailee, having made collections, failed to remit the proceeds, the claim of the owner of the money collected was, in a general sense, in the nature of a fiduciary debt, but not such an one as entitled him to a priority over the claims of general creditors in the distribution of the assets of the bailee who had become insolvent." *Ober* v. *Cochran, 118 Ga. 396* (45 S. E. 382, 98 Am. St. R. 118), is to the same effect. But it is said that the rule announced in these cases should not be applied where the bank became insolvent before the collection was made and the fund was paid over to the bank's receiver. In such a case it is urged that the fund is an asset of the depositor in the custody of the court, the depositor never having become a creditor of the bank, and the agency to collect having been terminated by the insolvency of the bank; that the receiver has no right to mingle the fund with the general assets of the insolvent bank, but should hold it as a trust fund to be paid over to the depositor upon demand. There is much in this argument to commend it. The particular fund is in gremio legis, and collected by the receiver as a special fund, in consummation of the agency of the bank, which has been terminated by its insolvency. The receiver is not bound to accept the fund; and if he does so, it would seem to be equitable and right for him to pay it over intact to the person who employed the bank to make the collection. But in *Schofield Manufacturing Co.* v. *Cochran*, 119 *Ga.* 901 (47 S. E. 208), the bank failed and was placed in the hands of a receiver before the money was returned, and it was held that the owner of the draft which was thus collected was not entitled to priority over general creditors. This

decision settles this question adversely to the contention of the defendant in error.

4. It is contended that the judgment dismissing the petition should be affirmed because the plaintiff's claim for damages is dependent upon a speculative or contingent event, which is not so legally certain as to authorize a recovery against the defendant. In other words, it is said that the allegation in the petition that the addressee, Carlos S. Hardy, would have stopped payment of the check had the message been promptly delivered is an averment as to the happening of an event uncertain and speculative. The rule applicable in such cases is thus stated in the Cyclopedia of Law and Procedure, vol. 37, p. 1758: "The loss is not, in the eye of the law, the proximate consequence of the telegraph company's negligence in a case where, even if the company had performed its duty, there can be no legal certainty that the loss would not still have occurred or the object of the message have been defeated. Thus, if the happening or preventing of the loss, even though the telegraph company had performed its duty, would still have been dependent on a speculative or contingent future event, or on the voluntary action or inaction of the other party to the message, or of plaintiff himself, or of a third party, where there was no obligation on the part of such party to act or not to act, it can not be said with legal certainty that the loss was the result of the telegraph company's negligence." This rule has been applied in a great variety of cases. For instance, where a suit was brought against a telegraph company for damages on account of the failure of the plaintiff to complete a contract referred to in the message, it was said that before the plaintiff could recover it must be said "with legal certainty that if that telegram had been delivered, there would have been an actual contract; for if a contract had not ensued, the company would clearly not be liable. We everywhere come across the rule that damages must not be contingent and conjectural. I do not here mean a conjectural process of fixing the mere amount of damages; but I mean that we can not fix damages upon a party as guilty of wrong upon a cause or basis resting on a contingency, upon an event that might, or might not, have happened. We can not say that the proposal of the lumber company would have been accepted." Beatty v. Telegraph Co., 52 W. Va. 414 (44 S. E. 311). To the same effect, see Tanning Co. v. Telegraph Co., 143 N. C. 376

(55 S. E. 777). The rule was applied in favor of the telegraph company in a case where it was sued for damages for failing to deliver a message to a witness summoned to testify in a pending action. It was held that the claim of the plaintiff that, if the witness had been present, he would have won his case was too speculative to be the basis of damages. Martin v. Telegraph Co., 18 Wash. 260 (51 Pac. 376). Claim for damages was also denied in a case where the company failed to deliver a message to a son, announcing the illness of his father, the claim being predicated upon the theory that if the message had been delivered, the son would have reached his father's bedside before his death and would have recieved from him a donation. The court held that such a loss as claimed by the plaintiff could not have been contemplated when the message was delivered. Chapman v. Telegraph Co., 90 Ky. 265 (13 S. W. 880). In Western Union v. Crall, 39 Kan. 580 (18 Pac. 719), it was held that damages could not be recovered on account of loss of anticipated gain based upon the probability of the plaintiff's horse being able to win prize purses at a trotting race. In Walser v. Telegraph Co., 114 N. C. 440 (19 S. E. 366), it appeared that the comptroller of the currency sent a telegram to the plaintiff, inquiring if he would accept the receivership of a certain bank at a compensation mentioned in the telegram. It was held that the plaintiff could not recover damages for the non-delivery of the message, inasmuch as, even if he had accepted the offer, the government was under no legal obligation to appoint him, and that for this reason the damages were too remote and rested upon an event too uncertain. So in a case where a telegram was sent requesting the shipment by express of four gallons of whisky, the plaintiff was not allowed to recover, because there was no evidence that the whisky would have been sent if the error in the transmission of the message had not been made. Newsome v. Telegraph Co., 137 N. C. 513 (50 S. E. 279). See also Smith v. Telegraph Co., 83 Ky. 104 (4 Am. St. R. 126); McColl v. Telegraph Co., 44 New York Superior Ct. 487. In *Clay* v. *Western Union Telegraph Co., 81 Ga. 285 (6 S. E. 813, 12 Am. St. R. 316), the plaintiff alleged that, by the negligence of the company, a telegram sent to him was not delivered in time for him to make a trade, whereby he lost a certain sum which he would have made as profits if he had received the telegram at the proper time. The plaintiff was an undertaker, and the telegram was a

direction for him to meet a certain train, to arrange for the shipment of the remains of the person named in the telegram. The court held that by the failure of the company to deliver the message the plaintiff lost a mere opportunity or possibility to make something, and the judgment dismissing the petition on general demurrer was sustained. See, also, *Western Union Telegraph Co.* v. *Watson,* 94 *Ga.* 202 (21 S. E. 457, 47 Am. St. R. 151) ; *Bashinsky* v. *Western Union Telegraph Co.,* 1 *Ga. App.* 761 (58 S. E. 91). In the case last referred to, the plaintiffs alleged that by the failure of the defendant to deliver a message they lost a contract under which they would have made certain commissions. Judge Russell, speaking for the court, said : "It can not be seen, from the allegations of the petition, how the plaintiffs were damaged. No right to recover damages is alleged. It is nowhere distinctly alleged that the plaintiffs had a contract with the sender of the message. On the contrary, from the distinct averment in the fourth paragraph of the petition, that they 'would have been able *to have made* the contract,' etc., it can only be inferred that they did not have such a contract as would have bound the sender of the message. They lost nothing but a chance to make something. It was a case of lost opportunity, but the plaintiffs were in the same condition after receiving the telegram as they were before, except the expense of their reply, which was sent 'at a venture.' It is averred that if the plaintiffs had received the telegram in time, they would have made $1,999.99. They might have done this if they had been able to make the contract, or they might not. No contract is set out." See also *Richmond Mills* v. *Western Union Telegraph Co.,* 123 *Ga.* 216 (51 S. E. 290), where the telegram which the defendant failed to deliver contained a mere proposal to sell goods. It was held that the claim of the plaintiff, that if the message had been delivered, the purchaser would have accepted and they would have made certain profits, rested upon an event too uncertain to authorize a recovery. In *Capers* v. Western Union Telegraph Co., 71 S. C. 29 (50 S. E. 537), the right to recover damages for the failure of the defendant to deliver a message in time to have money deposited in a bank to pay a check was denied upon the ground that the plaintiff failed to allege " that the addressee would have delivered the money in time to the person designated to convey it to the bank, and that such person would have conveyed it in time."

We recognize the soundness of these decisions and the correctness of the general rule therein announced, but we do not think this rule is applicable to the facts of the present case. If one owes another money, it is his duty to seek him out and pay him in legal tender. If the creditor, for the mere accommodation of the debtor, accepts the latter's personal check drawn upon a foreign bank, the creditor has the right to appoint an agent to collect this check. The delivery of the check to the creditor does not satisfy the debt, unless expressly so accepted. The obligation of the debtor continues until the check is actually paid. The creditor has a right to revoke the agency to collect, and, if he appoints a faithless agent and undertakes to revoke the agency, it is the duty of the debtor to co-operate with the creditor in the revocation of the agency; and if the debtor received from the creditor a telegram requesting him to stop payment of the check, and he should fail to do so, and the money should be misappropriated by the agent appointed to collect, the debt would not be satisfied and the debtor would still be liable to the creditor. This being true, the debtor would be under a legal obligation to stop payment of the check. The court will not assume, as a matter of law, in such a case, that the debtor would not comply with this obligation imposed upon him, but, on the contrary, will presume that he would have done what the law would require him to do in order to relieve himself from liability. The allegation in the petition is that the person to whom the message was addressed would have stopped payment of the check. If this person had been under no obligation to stop payment, but a mere outsider, the plaintiff would have stated no cause of action; because in that case the person to whom the message was sent might or might not have complied with the request, would have been under no obligation to do so, and the court would not presume that he would have done so. The possibility of his complying with the request in such a case would have been too uncertain and contingent to form the basis of a recovery. But we think the case is altogether different where the person to whom the message is sent is the one who drew the check and who owed the money, and who was, therefore, under a legal obligation to take the necessary steps to save himself from loss. See generally, on this subject, *Western Union Telegraph Co. v. Ford,* 8 *Ga. App.* 514 (70 S. E. 65), s. c. ante, 606 (74 S. E. 70).

5. But it is contended that Hardy, the person to whom the tele-

gram was addressed, was not such a debtor of the plaintiff as to place him under any legal obligation to comply with the request contained in the telegram. Under the allegations of the petition, the amount of money named in the voucher was due to the plaintiff, to be used by him for the purpose mentioned in the petition. Hardy was the custodian of the fund out of which this money was to be paid. He had a right to withdraw the fund by check. It was his duty as an agent of the supreme lodge of the Knights of Pythias, and as custodian of the fund, to pay over this amount of money to the plaintiff. Now, suppose the message had been promptly delivered to Hardy and he had negligently failed to notify the Chicago bank to withhold payment of the check. Is it not clear that Hardy would have been personally responsible for the loss of this money? A corporation acts only through its agents, and if one of its agents, by negligent inaction, causes the corporation to sustain a loss, the agent would be liable to the corporation. It is also true that if this agent, by his negligence, causes third persons to sustain loss, the agent would be individually responsible to the party injured. We think, therefore, that under the allegations of the petition the case stands just as though it were a transaction between an ordinary creditor and an ordinary debtor.

The fact that the telegram was addressed to Hardy as an individual makes no difference. It is said that as an individual Hardy had no right to stop payment on the check, but could have done so acting only in his capacity as an officer of the supreme lodge of the Knights of Pythias. We think it is entirely immaterial that the message was not addressed to him in his official capacity. Hardy as an officer and Hardy as an individual were one and the same man. If he had received the telegram as an individual, in all probability he would have taken whatever action was necessary and proper as an officer of the lodge to stop payment of the check. If the plaintiff had met Hardy on the street and requested him to stop payment of the check, it certainly would not have been necessary to address him expressly as general secretary of the supreme lodge of the Knights of Pythias, nor was it necessary to incorporate his official title in the telegram.

It is further contended that if there is any right of action at all, it is in the supreme lodge of the Knights of Pythias, and not in the plaintiff; that it appears from the allegations of the peti-

tion that the money belonged to the Knights of Pythias, and not to the plaintiff, and that he was the mere agent of the lodge to disburse the fund.  The petition alleges, that the plaintiff was individually responsible to the supreme lodge of the Knights of Pythias for the safe-keeping and proper distribution of the voucher-check deposited with the Neal Bank; that no loss ensued to the supreme lodge by reason of the failure of the plaintiff to receive the proceeds of the check, and that the plaintiff alone was responsible for its loss, and that he had in fact made the same good to the supreme lodge.  We think these allegations were sufficient to show that the plaintiff was authorized to bring suit in his own name. He avers, that he was responsible to the supreme lodge for the safe-keeping of the money; that the loss was occasioned by the act of the agent whom he appointed to collect the money, and that, recognizing his liability, he in fact paid to the supreme lodge the amount of the check.  Under these allegations the plaintiff had a right to maintain the action.  Our conclusion is that the demurrer was not well taken, and that the court erred in dismissing the petition.

*Judgment reversed.*