37654.   PIKE v. FIRST NATIONAL BANK OF ROME.

DECIDED MAY 14, 1959—REHEARING DENIED MAY 25, 1959.

600

*Davis & Davis, Lennie F. Davis, Hatcher, Smith, Stubbs & Rothschild, Albert W. Stubbs,* for plaintiff in error.

*Foley, Chappell, Kelly & Champion, Kenneth M. Henson, Oscar M. Smith, Matthews, Maddox, Walton & Smith,* contra.

TOWNSEND, Judge. ■ Whether or not the direction of a verdict in favor of the plaintiff was error must be determined by whether or not the plaintiff is a holder in due course or only an agent of its depositor, for the reason that the defendant Pike, the maker of the checks, had a good defense against Dixie Auto Auction and Andrews Motor Company based on failure of consideration which, if it might be urged against the bank, would defeat the action. (Code § 14-508). Code § 14-502 provides: "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) That he took it in good faith and for value; (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Dealing with the fourth requisite first, we find no merit in the contention of counsel for the plaintiff in error in his brief that "the bank was bound to know that the automobiles of J. C. Andrews Motor Company were mortgaged to People's Loan & Finance Company under a floor-plan arrangement and that, contrary to the standard provisions of such a plan, J. C. Andrews Motor Company was 'kiting' its payments under the floor-plan arrangement to the finance company." Even if the bank or some of its officers had notice of the contract between J. C. Andrews Motor Company and People's Loan & Finance Company there was no obligation, in the first place, for it to check every automobile Andrews sold to be sure that the proceeds of *that* automobile went to the loan company, and, in the second place, it was not bound to know, if such were in fact the case, that every automobile

sold by the motor company was subject to the lien created by the contract. A bank is not the guardian of the business activities of its depositors, and there is nothing in the record which would have required the bank, in the exercise of due diligence on its part, to check on behalf of the loan company and ascertain that its lien was paid off from the funds deposited therein on October 16. The check was complete and regular on its face; there was no notice of dishonor, the bank was in good faith in the premises, and it paid out to Pike on his demand all of the proceeds of the check with the exception of $66.44. It therefore either became a holder for value or, while in the course of collecting the proceeds for the depositor, loaned the depositor the value of the checks. It is contended that the latter is the only possible solution under the well established rule that "if the check or draft is deposited for collection, then it is clear that the bank does not take title, but merely undertakes to act as agent for collection; the title to the check or draft remains in the depositor, and the relation between the parties is that of principal and agent, and not of debtor and creditor. *Fourth National Bank* v. *Mayer*, 89 *Ga.* 108 (14 S. E. 891) ; *Freeman* v. *Exchange Bank*, 87 *Ga.* 45 (13 S. E. 160) ; *Bailie* v. *Augusta Savings Bank*, 95 *Ga.* 277 (21 S. E. 717, 51 Am. St. Rep. 74) ; Morris *v.* Eufaula Nat. Bank, 122 Ala. 580 (25 So. 499, 82 Am. St. Rep. 95). If the parties *intend* to treat such paper as cash, title passes at once upon receipt of the deposit by the banker, but if the intention is that the bank shall not be responsible except as an agent for collection, title remains in the depositor throughout. The difficulty in determining the relation between the parties lies in the determination of their mutual intention, and this must of necessity depend upon the individual facts of each case; so that the question is one rather of fact than of law." *First National Bank of Fayetteville* v. *McMillan Bros.*, 15 *Ga. App.* 319, 322 (83 S. E. 149). However, none of the cases in which this rule is applied concerns a situation where the bank, after receiving the check or draft for deposit, permitted the customer to draw against it and thus actually receive its value from the bank. In *First Nat. Bank of Dalton* v. *Southern Cotton Oil Co.*, 76 *Ga. App.* 779 (47 S. E. 2d 288), the action was between the de-

positor of a sight draft and a correspondent negligently undertaking its collection at the instance of the bank in which the deposit was made, and the opinion states that the relation of debtor and creditor was created between the depositor and the initial bank unless it was the intent of both parties that the deposit was to be treated as cash, that the presumption in such cases is that the check is received for deposit, and that the act of crediting it to the account of the depositor without more will not serve to overcome this presumption. In *Foster* v. *People's Bank*, 42 *Ga. App.* 102 (155 S. E. 62), the bank received for deposit its customer's cashier's check drawn on another bank. The issuing bank failed, and the depositing bank, with notice thereof, paid its customer the face amount of the check, part of which had been placed on a time deposit at interest. Thereafter, in a suit between the bank and the depositor, the direction of a verdict in favor of the bank on the theory that the bank was acting merely as a collecting agent for the depositor was held to be error.

*Hogansville Banking Co.* v. *Wilkinson*, 171 *Ga.* 165 (154 S. E. 789) was an action between the depositor of a check and the bank of deposit. At the time the check was deposited the bank knew that it was insolvent but the depositor did not know that fact. The bank of deposit closed before the check was collected, and the depositor, on ascertaining that fact, attempted to have the drawer stop payment, but the value of the check was nevertheless collected. The depositor at the time of depositing the check was overdrawn at the insolvent bank. It was held that the bank acted as an agent for collection and not as an owner of the paper, and that the depositor was accordingly entitled to receive from the insolvent bank the proceeds of the check less the amount in which it was indebted to the bank.

In *Spooner* v. *Bank of Donalsonville*, 144 *Ga.* 745 (87 S. E. 1062), in an action between the plaintiff who deposited a check to his credit under a collection agreement and the bank of deposit which had forwarded the check (it being lost in the mail) it was held that the presumption was that, although the plaintiff had drawn against his deposit in the bank, the credit extended by the bank was merely conditional and contingent upon payment,

and that the bank had not, as between itself and its depositor, purchased the check by advancing credit thereon.

*Cronheim* v. *Postal Telegraph-Cable Co.*, 10 *Ga. App.* 716 (74 S. E. 78) was an action by a depositor against a telegraph company for delay in delivering a telegram seeking to have payment stopped on a check which he had deposited for collection, where due to the negligence of the telegraph company it is alleged that the check was collected by an insolvent bank and the assets passed into the hands of the receiver. That case holds: "Where a check is indorsed to a bank 'for collection and credit for deposit' to the account of the payee, the bank is the agent of the payee to collect, and title to the check does not pass to the bank, in the absence of an agreement to that effect, evidenced otherwise than by the language of the indorsement."

Similar wording is found in *First Nat. Bank of Fayetteville* v. *McMillan Bros.*, 15 *Ga. App.* 319, 323, supra, where it was said: "It has been held in some cases that the fact that one had the privilege of drawing against a check deposited in bank by him, even before it was collected, was inconsistent with any transaction which did not vest in the bank the title to the paper. That fact is undoubtedly strong evidence of the mutual intention that the bank should become wholly responsible for the check or draft, though it has been held in some jurisdictions that the contrary may still be shown by evidence or implied from other facts . . . It will be noted that in each of these cases cited, the fact that the depositor had the right, under the agreement between himself and the bank, to check against a deposit of this character and did in fact draw or check against the deposit, and that the check or draft was honored by the bank, appears largely to determine the relation between the depositor and the bank, and thereby determine the title to the check or to the proceeds arising therefrom." It follows that while, where nothing else appears, a deposit to the credit of the depositor under a collection agreement gives rise to the presumption that there is an agency relation rather than a debtor creditor relation, and while, between the parties themselves, the bank may always charge back the uncollected check against its depositor whether it has advanced funds thereon or not, never-

theless, the presumption of agency relationship, so far as third parties are concerned, only holds so long as no contrary agreement between the bank and the depositor is shown. Proof that the bank did in fact not only credit the fund to the depositor but that it allowed the depositor to draw against that creditor is, according to the better rule, conclusive evidence of a contrary agreement. It was followed by necessary implication in *Fourth Nat. Bank of Cincinnati* v. *Mayer*, 89 *Ga.* 108 (3) (14 S. E. 891) where it was held: "Where a regular customer of a bank deposits with the bank his draft payable to his own order and indorsed, 'For deposit to the credit of' the drawer, and the same is entered to his credit on the books of the bank and forwarded by the bank to another bank for collection, the drawer, by the course of dealing, having the right to check against such deposit and in fact checking against it, and his checks being honored, the title to the draft passes to the first bank, and when collected by the second, the proceeds are not subject to garnishment at the instance of a creditor of the drawer, such proceeds being the property, not of the drawer but of the first bank." It is true that in that case there was no "collection agreement" in writing between the bank and the depositor, but the endorsement on the check was a restrictive endorsement (see *First Nat. Bank of Dalton* v. *Southern Cotton Oil Co.*, 76 *Ga. App.* 779, 783, supra), and, in the second place, the collection agreement is simply a device for the bank and the depositor to determine their respective rights as among themselves, not such a contract as will conclusively and in all events determine the status of the paper so far as third parties are concerned. No matter what the deposit agreement was initially, when the bank did in fact credit the deposit to its customer, and did in fact thereafter permit the customer to withdraw the fund before collection, and the customer did withdraw the fund, the bank became a holder for value of the check as to the amount withdrawn, so as to be able to enforce payment against the drawer thereof. That this is the majority rule in most of the jurisdictions, see 59 A.L.R. 2d 1173, 1185; Lowrance Motor Co. *v.* First National Bank of Auburn, 238 F. 2d 625; Burton *v.* United States, 196 U.S. 283 (25 S. Ct. 243, 49 L. Ed. 482); 8 Am. Jur. 191, Bills and Notes, § 442;

Brady, Bank Checks, 2d ed., p. 103; Patton's Digest, Vol. 2, p. 1256. The rule is succinctly stated in *Southern Fruit Distributors, Inc.* v. *Citizens Bank of Fort Valley,* 44 Ga. App. 832 (3) (163 S. E. 261), to the effect that, while where a check is deposited, nothing further appearing, it will be presumed that the bank is the agent for collection, where it is credited to the depositor's general account and the depositor is allowed to draw against it, nothing further appearing, it will be presumed that the bank is the holder in due course, and, thirdly: "Even if there are express conditions in the deposit contract which, if standing alone, would make the bank a mere agent for collection, yet where there were other facts, namely, that the draft was indorsed in blank and the bank thereafter paid checks drawn by the indorser against such deposit, if the bank, in these circumstances, was not the absolute owner of the draft, it at least became a pledgee, in addition to its relationship as agent; and the holder of a note or draft as collateral security stands to the extent of the debt secured, upon the same footing as a purchaser."

The undisputed evidence in this case showed that the checks in question were deposited to the customer's general account and it was permitted to draw against them on the same day and did in fact draw all but $66.44 out of the account after the checks had been credited to it; that this was four days before payment was attempted to be stopped on the check, that it was the general practice of the bank to give immediate credit on such deposits "on most of our accounts with regular customers," and that it had been the custom to do so in connection with the account of J. C. Andrews Motor Company and such credit was actually given pursuant to that custom. The evidence accordingly demands a finding that the bank was a holder in due course for value of the checks in question, and the trial court did not err in directing a verdict in its favor.

■ The remaining special grounds deal with (1) exclusion of a telephone conversation between Pike and the president of the plaintiff bank in which the latter stated he was trying to help the depositor, Andrews Motor Company; (b) a telephone conversation between the defendant and one Waldrep, owner of Dixie Auto Auction, the payee of the check, requesting the

defendant to stop payment thereon, and (c) evidence that People's Loan & Finance Company had an outstanding lien on the vehicles, a fact which would, as between the parties to the sale, have gone to show failure of consideration. None of this testimony would, if admitted, have affected the result of this case. Whether the bank was or was not interested in helping its depositor would not estop the bank, after allowing Andrews Motor Company to draw out the proceeds of the checks, from asserting its position that it was a holder in due course, and the remaining testimony would only be admissible if the bank did not occupy this status.

The trial court did not err in directing a verdict in favor of the plaintiff.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*