## FIRST NAT. BANK OF ROSWELL, N. M., v. SMITH BROS. GRAIN CO. (No. 11245.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 17, 1925.)

1. Banks and banking ⬅127—Checks deposited as checks do not raise relationship of debtor and creditor.

Checks deposited as checks do not raise relationship of debtor and creditor, and title to them remains in depositor; bank merely acting as agent of depositor for purpose of collection.

2. Banks and banking ⬅127—Title to check passes to bank when deposited as cash.

If at time of deposit of check there is definite understanding that it is deposited as cash, title passes to the bank.

3. Banks and banking ⬅127—Check passing to credit of depositor prima facie passes title to bank, but may show intention of parties from express or implied circumstances.

Prima facie passing, to credit of depositor, of check bearing indorsement not indicating that it was deposited for collection, passes title to bank, but this is not absolute rule and yields to intention of parties, expressed or implied from circumstances.

---

**4. Banks and banking ☞127—Finding of trial court that draft was delivered to bank for collection only held supported by evidence.**

Finding of trial court that draft had been delivered to bank for collection only *held* supported by evidence showing that amount of draft was subject to change and draft subject to refusal, and further fact that bank was charging interest on amount placed to drawer's credit until draft was paid.

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Action by the Smith Bros. Grain Company against R. E. Levers & Co., in which the Farmers' & Mechanics' National Bank of Fort Worth was garnished, and wherein the First National Bank of Roswell, N. M., appeared and controverted the pleading of plaintiff. From a judgment for plaintiff, the First National Bank of Roswell, N. M., appeals. Affirmed.

Goree, Odell & Allen and Hampden Spiller, all of Fort Worth, for appellant.

Smith & Smith, of Fort Worth, for appellee.

CONNER, C. J. Appellee obtained a judgment against R. E. Levers & Co., and as such judgment creditor garnished the Farmers' & Mechanics' National Bank of Fort Worth, Tex. The Fort Worth bank answered that it was not indebted to Levers & Co., but that it held $193.54, the proceeds of a draft drawn by that company, on December 4, 1923, on E. M. Rogers & Co., payable to the First National Bank of Roswell, N. M., and by that bank sent to the garnishee for collection; that the amount so collected by the garnishee bank was claimed by the Roswell bank as its property.

The appellee controverted the answer of the garnishee bank and alleged that the Roswell bank had received and accepted the draft for collection only, and that the drawer of the draft, Levers & Co., was in fact the owner of the fund, and it prayed that the Roswell bank be made a party and that it have judgment against both banks for the amount of the judgment which it alleged it had recovered against Levers & Co., in the main suit to which the garnishment was ancillary.

The Roswell bank appeared and controverted the pleading of the Smith Bros. Grain Company, alleging that it had purchased the draft from Levers & Co. and paid value for the same, and that the same was not taken by it for collection only, and that the fund collected by the Fort Worth bank belonged to it and not to Levers & Co.

The case was tried before the court without a jury and resulted in a judgment for the appellee company, from which the Roswell bank has prosecuted this appeal.

The draft in question was drawn by R. E. Levers & Co. upon E. M. Rogers & Co., care Farmers' & Mechanics' National Bank, Fort Worth, Tex., and made payable to the First National Bank of Roswell, N. M., in the sum of $322.56. Beneath the figures $322.56 appear in pencil $192.02, making a balance of $193.54. It was indorsed in blank by the First National Bank of Roswell, and further indorsed:

"No protest. Do not return account nonpayment until disposition instructions are furnished by sender. On arrival of car Penn 560032, accept paid freight bill as part payment. F. & M. Collection No. 18278. Paid December 4, 1923."

The trial court found that the draft had been delivered to the Roswell bank for collection only, and that the proceeds in fact belonged to Levers & Co. It is manifest that the vital issue in the case is one of fact. The draft was not indorsed by Levers & Co. for collection merely, and at the time of its deposit the evidence shows that the Roswell bank entered its face value to the credit of Levers & Co., which was one of its customers, and we think that without further explanation and evidence the fund would belong to the Roswell bank. Under that state of facts the Roswell bank would have the legal title and entitled to recover the draft or its proceeds from whomsoever had possession thereof. See Provident National Bank of Waco v. Cairo Flour Co. (Tex. Civ. App.) 226 S. W. 499; Atlantic Oil Producing Co. v. Dawkins (Tex. Civ. App.) 230 S. W. 525; West Texas National Bank v. Wichita Mill & Elevator Co. (Tex. Civ. App.) 194 S. W. 835. But we think it was not conclusively so.

[1-3] In 3 R. C. L. p. 524, § 152, it is said:

"When a check or other commercial paper is deposited in a bank, indorsed for collection, or where there is a definite understanding that such is the purpose of the parties at the time of deposit, there is no question that the title to the paper remains in the depositor. So, checks deposited as checks do not give rise to the relation of debtor and creditor, and the title to them remains in the depositor; the bank merely acting as an agent of the depositor for the purpose of collection. If, on the other hand, there is a definite understanding at the time of the deposit that such paper is deposited as cash, it is clear that the title passes to the bank. But, where a check indorsed in blank is deposited without any definite understanding as to the way it is to be treated, but is credited by the bank to the depositor as cash, and is so entered upon the depositor's pass book, the question frequently arises whether the title to the check passes immediately to the bank or remains in the depositor. Prima facie, according to the weight of authority, the passing, to the credit of the depositor, of a check bearing an indorsement not indicating that it was deposited for collection merely, passes the title to the bank. Still, according to the weight of author-

ity, the rule above stated is not an absolute rule, and is prima facie merely, and yields to the intention of the parties, expressed or implied, from the circumstances."

In Michie on Banks and Banking, vol. 2, p. 1374, § 156, it is said:

"It is a well-established rule that, where negotiable paper is deposited with a bank for the purpose of collection, the relation of principal and agent is thereby created between the depositor and the bank, and not the relation of creditor and debtor. The bank becomes the agent of the holder or payee, not of the drawer or maker. A bank, having received paper for collection, does not owe the amount thereof to the sender until collected, and, though it may enter a credit in its books therefor, such a credit may be treated as provisional if the paper is afterwards dishonored, and it may cancel the credit."

The rule indicated by the quotations just made is supported, we think, by the case of Heid Bros. v. Commercial National Bank of Hutchinson, 240 S. W. 908, 24 A. L. R. 904, in an opinion by Mr. Justice Hamilton of the Commission of Appeals, approved by the Supreme Court, and by the later holding of the El Paso Court of Civil Appeals in the case of Commercial Nat. Bank of Hutchinson v. Heid Bros., 257 S. W. 913.

If, therefore, nothing has been shown except that Levers & Co. had drawn the draft payable to the Roswell bank and that the Roswell bank had given credit therefor to Levers & Co., the judgment of the court would have been erroneous, but the evidence does not stop at this point. The draft was drawn by one J. C. Hearne, the office manager of Levers & Co. He testified to the effect that he personally handled the transaction; that accompanying the draft was a carbon copy of an invoice from Levers & Co. to Rogers & Co.—certificate of weight—a shipper's order bill of lading, covering a car of alfalfa hay, consigned to shipper's order with notification to E. M. Rogers; that he turned the draft over to the First National Bank of Roswell, N. M., and that bank credited Levers & Co. with $322.56 for the draft and bill of lading; that the draft was subject to deductions as to the amount of same; that the freight on the shipment was deductible; that, on receiving returns on the draft, the paid freight bill covering said freight would be, in effect, a draft against Levers & Co., and would be presented to it for payment in the same manner as any other draft would be presented; that the draft was not discounted to the bank, but just interest charged; that the interest charge was to be collected from Levers & Co. at the time of presenting to them the freight bill for payment; that the draft was what is known as an "arrival draft," and that the shipment of alfalfa hay covered by the draft was subject to inspection at destination; that the freight had not been prepaid; that the purchase price of the hay on which the amount of the draft was determined was on basis delivered at destination; that in drawing the draft no allowance was made for freight; that it was subject to rejection upon inspection of the hay at destination; that the bank at Roswell did not make any inspection of the hay through any of its employés.

There was further evidence to the effect that the shipment of hay was from Colorado and not from New Mexico, and testimony on the part of the bank's employés was to the effect that Levers & Co. were to be charged interest on the amount of its credit from the date thereof until the proceeds of the draft had been received by the Roswell bank. There is nothing in the evidence to the effect that, at the time of delivery of the draft to the Roswell bank by Levers & Co., there was any special negotiation or agreement in the nature of a purchase and sale.

[4] Under such circumstances, we thing it cannot be said that the trial court's conclusion was erroneous. The evidence bears the inference, at least, that the Roswell bank would not have made an absolute purchase of the draft subject to a reduction of the amount of freight not then known to it and not then known by Levers & Co., and also subject to the hazard of a rejection upon inspection of the hay at its destination, and its charge of interest indicates that the credit given Levers & Co. was treated as a loan and not as a final payment on a purchase made.

We accordingly conclude that the trial court's findings of fact and conclusions of law should be adopted, and the judgment affirmed.

DUNKLIN, J., not sitting.