## MERCHANTS' BANK OF KANSAS CITY v. GALLAGHER et al. (No. 11856.)

Court of Civil Appeals of Texas. Fort Worth.
April 14, 1928.

Rehearing Denied May 19, 1928.

1. Witnesses ⬤⟹268(1)—Cross-examination of bank's cashier as to whether it would have credited debtor with draft, proceeds of which were garnished, though taking draft for collection, held not improper.

In garnishment proceedings involving question whether proceeds of draft belonged to debtor or to bank, cross-examination of cashier of bank as to whether it would have credited debtor with draft, though taking it as a matter of collection, held not improper.

2. Garnishment ⬤⟹163—Testimony as to correspondence between debtor and his consignee concerning unfit condition of goods and reduction of draft held admissible to show draft, proceeds of which were garnished, was received by bank for collection only.

In garnishment proceedings involving title to proceeds of draft claimed by bank to have been purchased from debtor, and not merely taken for collection, testimony as to correspondence by wire between debtor company, shipping goods, and consignee of goods, relative to unfit condition of part of shipment and reduction of draft, held admissible to show debtor's ownership thereof.

3. Trial ⬤⟹139(1)—Issue should be submitted to jury, where there is evidence fairly tending to support it.

Where there is any evidence, circumstantial or otherwise, fairly tending to support material issue, issue should be submitted to jury.

4. Evidence ⬤⟹590—Court or jury is not bound to believe interested witness.

Court or jury is not bound to believe an interested witness, especially where there are circumstances casting suspicion on his testimony.

5. Banks and banking ⬤⟹127—Title to check placed to depositor's credit after indorsement prima facie passes to bank, but contrary intent may be shown.

Where indorsement of check does not indicate that it was deposited in bank for collection only, placing check to depositor's credit prima facie passes title to bank; but rule is not absolute, and yields to intention of parties, expressed or implied from circumstances.

6. Garnishment ⬤⟹163—Testimony that debtor's consignment was "advise shipment," not requiring collection of draft, held admissible to show draft, proceeds of which were garnished, was given bank for collection only.

In garnishment proceedings, involving question of title to proceeds of draft claimed to belong to debtor consigning goods, testimony that shipment was an "advise shipment," which could be delivered without production of bill of lading, and without collection of draft, held admissible to show draft was given bank for purpose of collection only.

7. Contracts ⬤⟹169—Circumstances surrounding execution of written agreement are admissible to show parties' intent.

In interpreting written agreement, it is permissible to consider any circumstances surrounding its execution legitimately tending to show the intention of the parties, though the written agreement is not ambiguous on its face.

8. Garnishment ⬤⟹163—Testimony as to reimbursement of bank for allowance on draft was admissible in garnishment proceedings to show bank took draft for collection only.

In garnishment proceedings, covering proceeds of draft, testimony of cashier of bank that, on notice that discount had been allowed by debtor drawing draft and consigning goods, bank required debtor to reimburse bank for allowance, and testimony as to why reimbursement of remainder of draft was not required, was admissible to show bank merely took draft for collection only.

Appeal from Tarrant County Court; P. W. Seward, Judge.

Suit by D. B. Gallagher against the Cochrane Brokerage Company, in which garnishment proceedings were instituted against the Farmers' & Mechanics' Bank of Fort Worth, covering funds to which the Merchants' Bank of Kansas City asserted a claim. From an adverse judgment, the Merchants' Bank appeals. Affirmed.

Smith & Smith, of Fort Worth, for appellant.

Mayer & Rowe, of Fort Worth, for appellees.

BUCK, J. On May 14, 1926, D. B. Gallagher recovered a judgment in the sum of $373.81 against Cochrane Brokerage Company, of Kansas City. On February 4, 1926, while the suit against Cochrane Brokerage Company for debt was pending, Gallagher sued out an application for writ of garnishment against the Farmers' & Mechanics' Bank of Fort Worth, alleging that said bank had effects belonging to the defendant Cochrane Brokerage Company. The writ of garnishment was issued, and the garnishee answered that it was not indebted to the Cochrane Brokerage Company in any sum, unless it should be held to be indebted by reason of facts thereinafter alleged. The garnishee further answered that on Febru-

ary 4, 1926, it received a draft with bill of lading attached, drawn by Cochrane Brokerage Company in favor of the Merchants' Bank of Kansas City and upon Bergman Produce Company, a corporation of Fort Worth, in the sum of $588.75; that said draft was duly accepted and paid to garnishee by said Bergman Produce Company; that on said date a writ of garnishment was served upon it, commanding it to appear and answer; that the Merchants' Bank of Kansas City made claim to be the owner of such fund, but garnishee does not know whether the Cochrane Brokerage Company or said bank is in fact the owner of said fund. Garnishee prayed that notice issue to Cochrane Brokerage Company and to the Merchants' Bank, requiring each of said corporations to appear and assert their respective claims to said fund, and that upon final hearing the garnishee have its costs, including attorney's fees.

The Merchants' Bank filed its original answer, alleging that on January 29, 1926, the Cochrane Brokerage Company presented said draft set out in garnishee's answer to it in Kansas City, and that it then and there purchased said draft and passed to the credit of said Cochrane Brokerage Company, who were depositors in said bank, the sum of $651.25, which said credit was made by it in good faith. It further pleaded that said draft was not taken by it for collection only, but that it actually purchased same and paid value therefor, and became the owner thereof by virtue of such purchase, and that the funds held by garnishee belong to it, and not to plaintiff.

Plaintiff joined issue with the Merchants' Bank, hereinafter called intervener, on its claim of ownership of the draft and proceeds thereof. A trial was had on special issues, and the jury found (1) that the Merchants' Bank did not credit the checking account of the Cochrane Brokerage Company with the full amount of the draft in controversy when same was presented to it on January 29, 1926; (2) that the credit of the checking account of the Cochrane Brokerage Company with the full amount of the draft in controversy was not made by the Merchants' Bank "finally." The court defined the term "finally" as meaning "without condition and without reservation." Upon this verdict the court rendered judgment for plaintiff against garnishee bank and Cochrane Brokerage Company in the sum of $373.81, with interest at 6 per cent. from May 14, 1926, and costs of suit and denied the right of the Merchants' Bank to recover. The Merchants' Bank has appealed.

## Opinion.

Appellant's first four propositions will be discussed together. They, in effect, present the contention that the burden of proof was upon the appellee to show that the fund in the hands of the garnishee was the property of the Cochrane Brokerage Company, and not that of appellant, and, there being no evidence to establish the fact that such fund was not owned by the appellant as claimed, or no competent or substantial evidence to establish such fact, that the court should have instructed a verdict for appellant. The evidence tending to establish the claim of appellee that the draft and its proceeds belonged in fact to the Cochrane Brokerage Company, and not to the bank, and that the bank had not purchased it finally, was necessarily largely circumstantial. The Cochrane Brokerage Company did not answer in this suit, nor in the original suit, in which a judgment was obtained against it.

No representative of the Cochrane Brokerage Company testified in this case. Max Leopold, vice president and cashier of the appellant bank, did testify, and stated that on January 29, 1926, in the regular course of business, the Cochrane Brokerage Company asked the officers of the Merchants' Bank to extend credit for the draft introduced in evidence; that there was nothing unusual about the matter; that the bank had handled lots of items with the Cochrane Brokerage Company the same way; the facts simply were that the draft was presented to the bank, and a request made for immediate credit for the use of the funds, which the bank agreed to give the brokerage company, and which it did give; that the credit which the bank gave for the draft in question was subject to check by the Cochrane Brokerage Company; that there was not any restrictions on the right to check on that account; that the Cochrane Brokerage Company, on January 29, 1926, deposited other and additional items than this draft in question, there being a credit on the ledger sheet as of that date of the sum of $6,659.61, of which amount the sum of $651.25 was represented by the draft in question.

It appears that the Cochrane Brokerage Company finally allowed the Bergman Produce Company a discount of $62.50, because some of the onions shipped were not fit for use. Mr. Leopold testified with reference to this discount that the reduction of $62.50 was made after the draft was forwarded to the Farmers' & Mechanics' Bank at Fort Worth; that "we were told that this draft would not be paid unless the reduction was made in the amount of the draft. We then told Mr. Cochrane that, inasmuch as he had had credit for this amount, he would have to reimburse us immediately for the amount of the reduction they wanted made on the draft. The Cochrane Brokerage Company did reimburse us to the amount of $62.50." On cross-examination by appellee's counsel, the witness answered the following question:

"Now, as far as your books are concerned, and the entries, too, with a customer you were used to doing business with and wanted his business, you wouldn't handle those entries any differently, if you had never bought this draft? You would charge the amount to him, and if you had confidence in him, whether you bought the draft or not, you would credit him with the amount of the draft, and then charge him back if it was turned down, wouldn't you?

"A. That all depends on the responsibility of the company. We wouldn't do that to every customer."

Then some objections to the questions were made by counsel for appellant, and the witness was asked the following question:

"If you just merely took that draft as a matter of collection, not intending to absolutely buy it, irrespective of whether this car was turned down, if you had confidence in that company, you would have credited him anyhow, even knowing afterwards, if the car was turned down, you would charge him back with it?

"A. That is right; yes."

[1] During the further progress of the examination, the witness answered:

"I said awhile ago that we were advised that the draft would have to be reduced $62.50. When we found that out with reference to the $62.50, we immediately required him to give us a check for that $62.50. The money had not been garnisheed at the time the reduction was made. We never made him reimburse us on the balance of the draft after the funds were garnisheed. We understood the draft was paid, and we didn't have anything to charge back to his account. We never required him to reimburse us on the $600; we would have, if the draft had been returned. Knowing the funds were garnisheed down here in Texas, we did not do that on the advice of our attorneys. We did not call on them for the $600 for that reason, and the fact that we didn't have the draft. I will amend my answer, on the advice of our attorneys. We were told, if the draft was actually paid, and not returned to us, that we had no right to debit the customer's account; we didn't have anything to go back on him for. I couldn't say that, but for the advice of those attorneys, we would have debited him back on that $600."

Objection was made to this last question and answer, but we think it was legitimate cross-examination.

[2-5] We are further of the opinion that, since proof depended largely on circumstantial evidence, and under the authorities liberality is exercised by a trial court, that it was also admissible to introduce certain correspondence by wire between C. H. Robinson Company, representative at Fort Worth of the Cochrane Brokerage Company, and the latter company. Frank O. Sims, employed by the C. H. Robinson Company, testified that, upon receipt of the shipment to the Bergman Produce Company, C. H. Robinson wired the Cochrane Brokerage Company that the shipment had been inspected and from 10 to 15 per cent. thereof was unfit for use, by reason

of decay; that Cochrane Brokerage Company wired back that the Bergman complaint was not justified and to insist on acceptance and payment of the full amount; that Robinson Company then wired the Cochrane Brokerage Company that they had inspected with Max Bergman the shipment, and found it as theretofore reported as to the amount unfit for use, and would get government inspection, if desired; that the Cochrane Brokerage Company then wired that they would reduce the draft as per requested.

We think this testimony was admissible as tending to show that the Cochrane Brokerage Company still owned the draft, and the proceeds thereof, and that the Merchants' Bank had not in fact purchased finally such draft. Where there is any evidence, circumstantial or otherwise, fairly tending to support the material issue, it should be submitted to the jury. The court or jury is not bound to believe an interested witness, especially where there are circumstances casting suspicion on his testimony. Bolt v. Savings Bank of Manchester, Iowa, 145 S. W. 707, opinion by Chief Justice Conner of this court. Prima facie, passing to the credit of depositor of check bearing indorsement not indicating that it was deposited for collection only passed title to bank, but this is not absolute rule, and yields to intention of parties, expressed or implied from circumstances. First Nat. Bank of Roswell, N. M., v. Smith Bros. Grain Co., 276 S. W. 951, opinion by Chief Justice Conner of this court. In Michie on Banks and Banking, vol. 2, p. 1374, § 156, it is said:

"It is a well-established rule that, where negotiable paper is deposited with a bank for the purpose of collection, the relation of principal and agent is thereby created between the depositor and the bank, and not the relation of creditor and debtor. The bank becomes the agent of the holder or payee, not of the drawer or maker. A bank, having received paper for collection, does not owe the amount thereof to the sender until collected, and, though it may enter a credit in its books therefor, such a credit may be treated as provisional, if the paper is afterwards dishonored, and it may cancel the credit."

See Heid Bros. v. Commercial Nat. Bank of Hutchinson, 240 S. W. 908, 24 A. L. R. 904, by the Commission of Appeals, approved by the Supreme Court; Commercial Nat. Bank of Hutchinson v. Heid Bros., 257 S. W. 913, by the El Paso Court of Civil Appeals.

In 10 Ruling Case Law, p. 930, § 94, it is said:

"There can be no question at the present day as to the competency of circumstantial evidence. The distinction between direct and circumstantial evidence has already been stated. In no case is evidence to be excluded of any fact or circumstance connected with the principal transaction, from which an inference as to the truth of a disputed fact can reasonably be made, especially when it becomes necessary to show a

particular intent in a party as an essential ingredient in the crime with which he is charged."

This rule evidently applies to trial of civil cases as well as criminal. We believe that it was competent to show that the Cochrane Brokerage Company, subsequent to the deposit of the draft in the Merchants' Bank at Kansas City, dealt with the shipment as if it were its own. See Mayfield v. First Nat. Bank, 287 S. W. 510, by the Waco Court of Civil Appeals; Pennington Produce Co. v. Browning, 293 S. W. 935, also by the Waco Court.

During the trial the plaintiff introduced A. E. Rankin, the local freight agent of the Missouri, Kansas & Texas Railway of Texas at Fort Worth. He testified that the shipment in question moved on what the railroad men termed an "advise shipment"; that the shipper in such shipments ships in his own name to whoever he sees fit, and he advises whoever he sees fit, and it is delivered on his "advise order"; that under a strictly shipper's order the railroad company was not privileged to deliver a shipment so billed without surrender of the bill of lading properly indorsed, whereas, under an "advise order," it would be privileged to make delivery by production of a document such as this. He further testified:

"There was a marked difference. We could deliver it with the bill of lading outstanding and not delivered, if it isn't billed strictly shipper's order; but, if it was billed strictly shipper's order, why then we would necessarily have to take up the original bill of lading, or bond in lieu thereof. Where there is an order advise, like I hold in my hand, then there is no outstanding order bill of lading. There was not on this shipment, so far as we know."

[6, 7] We think this testimony was admissible, in order to show the purpose of the Cochrane Brokerage Company in making the shipment, and that they so made it, so that it could be delivered without the production of the bill of lading by the consignee, and without the collection of the draft. The Commission of Appeals, in the case of Allison v. Campbell, 298 S. W. 525, adopted by the Supreme Court, said:

"A fundamental rule in the construction of written instruments is to ascertain therefrom and to give effect to the intentions of the parties thereto. In arriving at the intentions of the parties on the issue of partnership as they affect third parties, it is permissible, in interpreting the written agreement introduced, to consider any circumstances surrounding its execution legitimately tending to show such intentions, including the subsequent acts and statements of the parties, even though the written agreement introduced is on its face unambiguous. Rush v. Bank (Tex. Civ. App.) 160 S. W. 323."

We think this is especially applicable in this case. The Commission of Appeals in the case of Daugherty v. Wiles, 207 S. W. 900, said:

"It is well settled that agency may be established by circumstances, such as the relation of the parties and their conduct with reference to the subject-matter of the alleged contract. * * * As a general rule, agency cannot be established by proof of the acts of the alleged agent, in the absence of evidence to show the principal's knowledge of such acts or his assent to them; but where the acts are of such character as to justify a reasonable inference that the principal had knowledge of them, and would not have permitted them, if unauthorized, the acts themselves are competent to show agency."

[8] The testimony of Leopold that his bank, upon notice that an allowance or discount of $62.50 had been allowed by the Cochrane Brokerage Company, required said brokerage company to immediately reimburse the bank for such allowance, and his further testimony as to the reasons they did not require a reimbursement of the remainder of the draft upon the failure of the bank to get a full return thereof, was admissible as tending to show that the bank in fact did not finally purchase the draft, but only took it for collection.

We have carefully examined the other assignments of error, and do not find any error therein.

All assignments of error are overruled, and the judgment is affirmed.

#### Appellant's Motion for Rehearing and Motion to Certify.

Appellant, in its motion for rehearing, urges that, in our holding that the trial court did not err in admitting in evidence the telegraphic correspondence between the Cochrane Brokerage Company and C. H. Robinson & Company, the latter representatives of the former, we are in conflict with Smith v. Merchants' & Planters' Bank (Tex. Civ. App.) 40 S. W. 1038, and Daggett v. Farmers' National Bank of Stephenville, 259 S. W. 198, by this court, and affirmed by the Commission of Appeals, approved by the Supreme Court in 2 S.W.(2d) 834. We have examined these cases, and fail to see in what respect we are in conflict with the holding in such cases.

Therefore the motion for rehearing and also the motion to certify are overruled.