**SUTER v. CITY NAT. BANK.** (No. 12043.)

Court of Civil Appeals of Texas. Fort Worth. . Nov. 3, 1928.

Rehearing Denied Jan. 5, 1929.

Kilgore, Rogers & Montgomery, of Wichita Falls, for appellant.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee.

DUNKLIN, J. On January 17, 1927, G. L. Suter, who lived in Devol, Okl., drew a draft of that date on Hunt Rigsby Company at Burkburnett, Tex., for the sum of $343.87, made payable to the order of the Oklahoma State Bank of Devol, hereinafter referred to as the Devol bank. At the time that draft was drawn, Suter was indebted to the Devol bank in the sum of $269.25, and he was given credit on the books of the bank for the amount of the draft less 81 cents, which was charged to exchange account, and, after allowing that credit, the books of the bank showed a balance to his credit of $73.81. The Devol bank then indorsed the draft, "Pay to the order of any bank, banker or trust company," and sent the same to the City National Bank of Wichita Falls, Tex., hereinafter referred to as the City National Bank, with instructions that it was for "collection and credit." The draft was received by the City National Bank on January 18, 1927, and immediately upon its receipt that bank entered a credit on its books in favor of the Devol bank for the amount of the check, and before the entry of that credit the Devol bank was indebted to the City National Bank in the sum of $11,737.25. As soon as the City National Bank received the draft, it forwarded the same for collection to Burkburnett, Tex., where payment was refused by the drawee and the draft was duly protested for nonpayment. The Devol bank ceased to do business on account of insolvency on January 18, 1927, and the City National Bank received notice of such insolvency on the same day, but after credit had been given for the draft. About 11 o'clock of January 18th, Suter was informed that the Devol bank had closed its doors, and immediately notified Hunt Rigsby & Co. not to pay the draft. Attached to the draft at the time it was delivered to the Devol bank by Suter was a bill of lading for 10 bales of cotton sold to the drawee by Suter. Later, by agreement of all parties, the cotton was sold, and the proceeds of sale amounted to $451.28, which was deposited with the Wichita State Bank & Trust Company as a stakeholder to await the settlement of the rights of the parties by judicial proceedings. As soon as the Devol bank failed, its affairs were taken over by Chas. W. Crooks, liquidating agent for the state of Oklahoma.

This suit was instituted by the City National Bank against G. L. Suter and the Wichita State Bank & Trust Company to recover the amount of said draft, with legal interest and for title to an equal amount of the funds in the hands of the stakeholder. The allegations of plaintiff upon which the cause of action was predicated were, in effect, that the draft and bill of lading already mentioned were duly executed by defendant Suter, and that plaintiff had acquired title thereto in due course of business before maturity and for a valuable consideration, and that the drawee had refused payment and the draft had been duly protested.

The defendant Suter denied the allegations in plaintiff's petition, and alleged that plaintiff was not the owner and holder of the draft and not entitled to the proceeds of the cotton; that plaintiff paid nothing of value for the draft, was not the owner thereof in due course, and was entitled to no rights, equities, or interest in the funds held by the stakeholder.

By way of cross-action, Suter sought a judgment against the plaintiff and the stakeholder for title to the funds held by the latter upon allegations that he was the owner of the draft and cotton, that he had never parted with title to either, and that plaintiff owned no right or title therein.

The case was tried before a jury, who returned a verdict in favor of plaintiff for the amount sued for by it, in obedience to a peremptory instruction by the trial court. The defendant G. L. Suter has prosecuted this appeal.

Assignments of error are presented to the action of the trial court in giving the peremptory instruction and in refusing the submission of issues requested by Suter, reading as follows:

"1. Find whether or not the item in question upon being returned to the plaintiff herein by the bank at Burkburnett would, under the ordinary course of banking business, have been charged against the account of the Oklahoma State Bank of Devol, Oklahoma, and the item returned to such bank. Answer Yes or No.

"2. Find whether or not on January 18, 1927, the City National Bank had sufficient collateral pledged as security for the payment of the note payable to it executed by the Oklahoma State Bank of Devol, fully to discharge the same. Answer Yes or No.

"3. Find whether or not on January 18th or 19th, 1927, the defendant G. L. Suter instructed the vice-president of the City National Bank to return the item in question to the Devol State Bank of Oklahoma for payment. Answer Yes or No.

"4. Was it the understanding between G. L. Suter and the Oklahoma State Bank at Devol that any draft presented by Suter to said bank and for which he obtained credit at the time, would be if returned unpaid, charged back against the credit theretofore given on such item. Answer Yes or No.

"5. Find whether or not the item in question upon being returned to the Oklahoma State Bank of Devol unpaid, would, under the ordinary course of banking business, have been charged to the account of G. L. Suter. Answer Yes or No."

C. E. Basham, vice president of the City National Bank, testified in part as follows: "When the item got back from Burkburnett we did not charge their account corresponding to their credit and neutralize those two items by cancellation because they had no account at the time. With a running bank that would have been the way to handle it. If the bank had not failed that is the way we would have done it. That is the customary way. When everything is going smooth it is customary when an item comes in and we credit it, and when it comes back unpaid and protested, we charge the account and cancel the two items. I presume that is the way we would have handled it had it not been for the failure on the 18th day of January of the Oklahoma State Bank. We are holding this draft and it has never been paid."

That testimony is pointed out by appellant as pertinent to requested special issue No. 1. No testimony is pointed out by appellant to support an affirmative finding on requested issue No. 2, nor have we found any in the record. Suter did testify that on January 19th he instructed Mr. Basham, vice president of the City National Bank, to return the draft to the Devol bank, that being the inquiry in special issue No. 3.

The deposit slip given to Suter by the Devol bank contained this provision: "Right is reserved and the bank is authorized to forward items for collection or payment, direct to the drawee or payor bank, or through any other bank at its discretion, and to receive payment in drafts drawn by the drawee or other banks and except for negligence, this bank shall not be liable for dishonor of the drafts so received in payment nor for losses thereon,"

That was the only evidence offered to support an affirmative finding on special issues 4 and 5.

■ We have reached the conclusion that the trial court did not err in instructing a verdict in favor of the plaintiff. The draft was made payable to the Devol bank without any qualifications or conditions. The indorsement of the draft by the Devol bank and its delivery to the City National Bank conveyed legal title to the latter, who had no notice of any defect of title or any defense thereto, when it received the draft and gave credit therefor on its books to the Devol bank.

■ The uncontroverted facts recited above made the City National Bank a holder of the draft in due course within the terms of section 52 of the Negotiable Instrument Act, shown in article 5935, Texas Civil Statutes of 1925. The right so acquired was free from any defect of title of the Devol bank and free from any defenses available to Suter as against that bank, and with the right to enforce payment against Suter, within the terms of section 57 of the same act and also shown in article 5935, unless it can be said, as insisted by Suter, that the draft and proceeds thereof were held by the City National Bank in trust for the Devol bank. The burden was upon Suter to show such trust relation, and he failed to discharge that burden. There was no understanding between the parties relative to the purpose of the transfer of the draft, except the letter of the Devol bank which accompanied it, showing an instruction to collect and credit the draft to the account of the sending bank. There was no ambiguity or uncertainty in that instruction. Its plain meaning was that the City National Bank should collect the draft and place the same to the credit of the Devol bank, and the latter bank then had an account with the City National Bank. Aside from the indorsement on the back of the draft, the instruction of itself placed the legal title in the City National Bank and fixed the relation of debtor and creditor between the two banks. If the instruction had been that the draft should be collected and the proceeds remitted to the Devol bank, then it might be said that the City National Bank held the draft and its proceeds in trust for the Devol bank, and that no title passed to the City National Bank.

While witness Basham testified that, ac-

cording to custom prevailing among banks after the draft was returned from Burkburnett dishonored, the credit already given the bank would have been eliminated and the draft returned to the Devol bank, yet he further testified that that custom applied only when the sending bank is doing business in régular course, and that it did not apply when the sending bank was insolvent. On the contrary, he testified without contradiction that, in the latter event, the custom was to retain the draft and the proceeds therefrom and apply the same in payment of any indebtedness that the sending bank might then owe it. That custom is in accord with the right of a bank to so apply such deposits whenever the depositor becomes insolvent, as announced in 7 Corpus Juris, pp. 652 and 656, inclusive.

The foregoing conclusions we believe are well supported by the great weight of the authorities, including such as 7 Corpus Juris, § 246, p. 599, section 282, p. 616; Vaughn v. Farmers' & Merchants' National Bank, 59 Tex. Civ. App. 380, 126 S. W. 691; Continental National Bank v. Weems, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85; Burton v. U. S., 196 U. S. 295, 25 S. Ct. 243, 49 L. Ed. 485; Metropolitan National Bank v. Merchants' National Bank, 182 Ill. 367, 55 N. E. 361, 74 Am. St. Rep. 180; Doppelt v. National Bank of the Republic, 175 Ill. 432, 51 N. E. 753.

Appellant has cited several authorities to sustain his contention that the transaction between the two banks constituted the receiving bank the agent of the sending bank to collect and remit the proceeds, and therefore the relation of debtor and creditor between the two banks was never created. Authorities cited include Merchants' Bank of Kansas City v. Gallagher (Tex. Civ. App.) 8 S.W.(2d) 683; Cronheim v. Postal Telegraph-Cable Co., 10 Ga. App. 716, 74 S. E. 78; Beal v. Somerville (C. C. A.) 50 F. 647, 17 L. R. A. 291; City of Philadelphia v. Eckels (C. C.) 98 F. 485; Morris v. Bank, 201 Pa. 160, 50 A. 1000. We deem it sufficient to say that some of the cases are distinguishable from the present suit, and that others are out of harmony with the weight of authorities on the questions determined above.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

It is insisted that there was no competent evidence to show that the City National Bank gave the Devol bank credit for the draft in controversy before notice to it of the insolvency of the Devol bank, which notice they received on January 18, 1927. The point made is that Basham, vice president of the City National Bank, testified to that fact from hearsay; his testimony as to that point, referring to the failure of the Devol bank, being as follows: "I heard on the 18th of January that they had failed. That must have been the same day I gave them credit for this item. I presume I heard after I gave them credit for this item, but I do not remember anything about that as Mr. Langford made that charge against them that day."

Basham's testimony that credit was given the Devol bank on January 18th for the amount of the draft was uncontroverted, and whether that credit was given before or after notice of the insolvency of the Devol bank was immaterial, since the right of the City National Bank to thus charge the Devol bank's account with the draft had attached as soon as the draft was received. Furthermore, according to appellant Suter's own testimony, he did not notify the City National Bank of his repudiation of the draft until January 19, 1927, the day after the draft had been credited to the Devol bank's account.

As pointed out in opinion on original hearing, the rule is that, when a depositor becomes insolvent, the bank with whom he has made deposits has a right to apply any deposits in that bank to his credit to the liquidation of any debt he may then owe the bank.

Appellant cites the following from 7 Corpus Juris, p. 604, par. 254: "Where the bank is insolvent at the time the paper is deposited therein, it acquires no title to such paper no matter how it may be indorsed, as accepting the paper under such circumstances amounts to a fraud."

Appellant then urges that the Devol bank acquired no title to the draft when deposited with it by Suter, since it was then insolvent, and, since the Devol bank acquired no title, necessarily it held the draft as a trustee for Suter and could not convey title to the City National Bank. The opinion of this court in the case of Interstate National Bank v. Claxton, reported in 77 S. W. 44, and that of the Supreme Court, reported in 97 Tex. 569, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep. 885, are cited by appellant to support his contention that the City National Bank had no right to apply the proceeds of the draft to satisfy any part of the debt owing to it by the Devol bank. In that case Tamblin & Tamblin, who were engaged in the live stock commission business in Kansas City, were employed by Claxton, residing in Texas, as factors to sell his cattle shipped to them. The factors sold the cattle and deposited the proceeds to their own credit. The bank with whom the deposit was made applied a part of the proceeds of the sale to the liquidation of the amount owing to the bank by the factors after the latter became insolvent. The right so to do was denied, although it was further held that the bank was not liable for amounts paid out by it to other persons upon checks drawn by the factors before Claxton revoked the agency of the factors to handle the money for him. It thus appears that the relation of principal and agent existed between the factors and Claxton, and the lat-

ter's right hinged upon that relation and not upon the law of negotiable instruments, as is true in the present suit. The ruling in that case was that credit given by the bank to the factors for their past-due indebtedness to the bank was not a valuable consideration. That ruling was based upon equitable principles and not upon the law of negotiable instruments, which was later adopted by statutes in this state. The same observations are applicable to other decisions, such as Davis v. Panhandle National Bank (Tex. Civ. App.) 29 S. W. 926.

As pointed out in opinion on original hearing, the draft drawn by Suter was made payable to the order of the Devol bank. The contents of the deposit slip given to Suter by the Devol bank at the time of his deposit, as copied in opinion on original hearing, was not brought to the notice of the City National Bank prior to its acceptance of the draft, and therefore could not affect the latter's rights in any respect. On its face the draft was made payable to the order of the Devol bank with no conditions or qualifications. It cannot be doubted that the draft was a negotiable instrument. Sections 24 and 25 of the Negotiable Instrument Act, as shown in article 5933, Rev. Civ. Statutes of 1925, read as follows:

Section 24. "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

Section 25. "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time."

And section 30 of the same act, appearing in article 5934, reads as follows:

Section 30. "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery."

Those statutes necessarily are of controlling effect as between the City National Bank and appellant, Suter, to the exclusion of any rules of equity that might lead to a different result, and applicable to the relation between principal and agent, and where no negotiable instrument is involved. While as between Suter and the Devol bank it may be said that the equitable title to the draft remained in Suter, nevertheless he conveyed to that bank the legal title, and the same legal title was acquired by the City National Bank without notice of such equity in Suter. By reason of that fact, the many authorities cited by appellant to show that the Devol bank held title to the draft as a trustee only, without power to convey any title to the City National Bank, have no proper application here.

Appellant insists that the undisputed evidence shows that, at the time the City National Bank received the draft in question it had collateral on hand sufficient to discharge the debt then owing to it by the Devol bank without resort to the draft in question. Basham testified that, after the Devol bank was given credit for the $343, the amount of the draft, it still owed the City National Bank $11,737.25, secured by a note, or notes, as collateral, and that later that balance was paid. Appellant, Suter, testified that the collateral held by the City National Bank amounted to about $15,000.

In his pleadings, Suter did not invoke the rule applicable to the defense of marshaling of securities; in other words, there was no plea that the plaintiff bank had on hand collateral sufficient to satisfy the indebtedness to it by the Devol bank, and pray that the same be exhausted before resort to the draft; nor was there any plea that the plaintiff bank had already been paid in full the debt owing to it by the Devol bank at the time the draft was negotiated. Nor was there any issue tendered or offered to show that the collateral securities held by the bank had been dissipated or lost through the negligence of the holder. Since the proof offered by the plaintiff prima facie showed that it was a holder of the draft in due course, the testimony referred to above cannot be urged here in the absence of any pleading under which it could in any event be made available as a defense to plaintiff's suit.

Accordingly, the motion for rehearing is overruled.