## FIRST NAT. BANK OF CORSICANA v. WM. CAMERON & CO., Inc.

### No. 2278.

Court of Civil Appeals of Texas. Waco.

Feb. 27, 1941.

Rehearing Denied March 27, 1941.

Taylor & McWilliams, of Corsicana, for appellant.

Sleeper, Boynton & Kendall, of Waco, for appellee.

HALE, Justice.

Appellee, Wm. Cameron & Co., Inc., hereinafter referred to as "plaintiff," recovered judgment against the First National Bank of Corsicana, herein referred to as "Corsicana bank," by reason of the latter's alleged liability on a check drawn on said bank as county depository by the Pecan District No. 83, a common school district in Navarro county. The case was tried to the court without a jury upon an agreed statement of facts, supplemented by certain documentary evidence and the testimony of the cashier of the Corsicana bank. The facts giving rise to the litigation are without dispute and, as found by the trial court, are substantially as follows:

On March 1, 1933, the school district issued its check or voucher, drawn on the Corsicana bank, payable to the order of plaintiff, in the sum of $980. About 3 o'clock in the afternoon of the same day, plaintiff, who was then and had been for a number of years a regular customer of the First National Bank of Blooming Grove (herein referred to as "Blooming Grove bank") caused the check to be duly endorsed in blank and deposited in the Blooming Grove bank, at which time plaintiff received a deposit slip containing a printed notation to the effect that in receiving items for deposit or collection, said bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care, and that all items so received are credited subject to final payment in cash or solvent credits. Upon receiving such check the Blooming Grove bank entered a credit in plaintiff's passbook for the amount thereof, which passbook contained the identical language as above set forth in the deposit slip. The Blooming Grove bank entered on its books at the same time a credit to plaintiff's account for the amount of said check, which credit was never charged back against plaintiff on the Blooming Grove bank's books, and it immediately endorsed the check to the order of any bank or trust company and forwarded same to its correspondent, the Corsicana bank, "for collection and credit."

The Corsicana bank received the check and letter of transmittal in due course of mail on March 2, 1933, which was a banking holiday. Effective March 3rd, and through March 15, 1933, neither bank was open for business, due to the national and state bank holidays declared by the President of the United States and the Governor

of Texas, respectively. On March 16th the Corsicana bank again opened for business as usual, but the Blooming Grove bank, having been placed under the supervision of a national bank conservator, did not re-open for the general conduct of its banking business and in November it was placed in the hands of a receiver and thereafter liquidated. The Corsicana bank, immediately after opening for business on March 16th, debited the account of the school district with the amount of the check and credited the regular deposit account of the Blooming Grove bank with the same amount. The Corsicana bank had no knowledge of the notation on the deposit slip or in the passbook issued by the Blooming Grove bank to plaintiff, and it had no knowledge or notice of the insolvency or restricted operations of the Blooming Grove bank until after March 16, 1933. The Blooming Grove bank was indebted to the Corsicana bank on and prior to March 16th in the approximate sum of $16,000, represented by two past-due notes, which were partially secured by collateral. On July 29th the Corsicana bank, with notice of the insolvent condition of the Blooming Grove bank, debited the deposit account of the Blooming Grove bank with the full amount of such deposit account, including the amount represented by the check in question, and credited the same on the past-due notes held by it. Plaintiff made no demand on the Corsicana bank for the proceeds of the check here involved until some time in the month of February, 1934. By agreement between the Corsicana bank and plaintiff, and without prejudice to their rights as against each other, plaintiff has collected, for the benefit of the person entitled thereto, the sum of $490 paid as a dividend by the receiver on behalf of the Blooming Grove bank to its creditors, in so far as the $980 deposit is concerned.

Based upon the foregoing facts, the trial court filed conclusions of law substantially as follows: (1) The deposit by plaintiff with the Blooming Grove bank was for collection and did not pass title in said check to the Blooming Grove bank, but constituted such bank plaintiff's agent for the collection of said check; (2) the Corsicana bank was not an innocent purchaser for value of said check, or the proceeds thereof, but was a sub-agent of plaintiff in collecting said check, and the collection thereof was not completed at a time when the collection of the check and the credit thereof to the deposit account maintained by the Blooming

Grove bank could change the relationship between plaintiff and the Corsicana bank from principal and sub-agent to a relationship of debtor and creditor as between the two banks; (3) the credit of the proceeds from said check on the indebtedness due to the Corsicana bank by the Blooming Grove bank was not entered as an exercise of a debtor's privilege to offset until the Corsicana bank had knowledge of the insolvency or restricted operations of the Blooming Grove bank; (4) plaintiff was entitled to recover of the Corsicana bank the sum of $490, being the amount of said check less the dividend collected from the receiver of the Blooming Grove bank, together with interest on said sum from the time plaintiff made demand on the Corsicana bank for the proceeds of said check. The court entered judgment accordingly, from which the Corsicana bank has perfected this appeal, and by appropriate assignments it challenges the correctness of the legal conclusions above set forth and insists that plaintiff should have been denied any recovery against it.

We do not think the legal relationship which existed between the parties at the inception of the transactions here under consideration is of controlling importance. There has been a marked diversity of opinion on the issues thus presented. Heid Bros. v. Commercial Nat. Bank, Tex.Com. App., 240 S.W. 908, 24 A.L.R. 904; Commercial Nat. Bank v. Heid Bros., Tex. Civ.App., 257 S.W. 913; Mayfield Co. v. First Nat. Bank of Terrell, Tex.Civ.App., 287 S.W. 510; O'Hara v. Texas Nat. Bank, Tex.Civ.App., 299 S.W. 649; Suter v. City Nat. Bank, Tex.Civ.App., 12 S.W.2d 1037. In our opinion, a correct disposition of the case turns upon the question as to whether, in the course of the dealings between the parties, there was a change in their legal status, and if so, as to the effect thereof.

■ In deference to the conclusions of the trial court, we may assume that the deposit by plaintiff with the Blooming Grove bank was intended for collection by the latter in cash or solvent credits, and that the credit originally given to plaintiff by the Blooming Grove bank was conditioned upon the latter's collection of said check in the manner indicated. Therefore, such deposit did not pass title in said check to the Blooming Grove bank at the time when the deposit was made, and the Blooming Grove bank was plaintiff's agent for the collection of the check and the Corsicana bank was not a purchaser of the same but was merely a sub-agent in the transaction until the Blooming Grove bank admittedly received final payment of the check from the Corsicana bank in solvent credits.

■ However, when the Corsicana bank effected collection of the check on March 16th by charging the proceeds thereof to the existing account of the School District and by crediting the same to the deposit account of the Blooming Grove bank, as it was authorized and directed to do, the original relationship between the parties changed. The object for which the agency had been created was then accomplished. Thereupon the conditional credit which the Blooming Grove bank gave to the plaintiff at the time when the deposit was made became absolute and unconditional, and the Corsicana bank then ceased to be the agent either of plaintiff or of the Blooming Grove bank, but from that time on the Corsicana bank was a debtor of the Blooming Grove bank, which was in turn a debtor of plaintiff. See United States Nat. Bank of Galveston v. Azar, Tex.Civ.App., 102 S.W. 2d 242, error refused, and cases there cited. We believe the holding referred to is decisive of the questions involved in this appeal. No reason is advanced as to why the Blooming Grove bank and its conservator, and later its receiver, could not have demanded and received from the Corsicana bank at any time prior to July 29th the proceeds from the check which was credited unconditionally to the deposit account of the Blooming Grove bank on March 16th. The Corsicana bank was in no way responsible for the fact that plaintiff could not legally demand and receive from the Blooming Grove bank all the money which it rightfully owed to plaintiff.

■ As we view the case, it is wholly immaterial whether the Corsicana bank had the right on July 29th to credit the proceeds from said check as an offset on the indebtedness due it by the Blooming Grove bank. If such offset was improper (which we do not attempt to decide) the sole right to question the impropriety, if any, of the same would vest in the receiver of the Blooming Grove bank for the benefit of its creditors. It appears that the receiver of the Blooming Grove bank has admitted its liability as an unconditional debtor, in so far as the deposit in question is concerned, by paying a fifty per cent dividend thereon. Such liability, if any, would necessarily be contingent upon the unconditional liability

of the Corsicana bank to it. United States Nat. Bank of Galveston v. Azar, supra. And so, if the Corsicana bank's knowledge of the insolvency of the Blooming Grove bank operated to deprive it of a debtor's privilege of offset on July 29th, then the Corsicana bank might be liable to the receiver of the Blooming Grove bank for the entire amount of the proceeds from the check, but in no event would it be liable directly to plaintiff for any part of the same.

■ The facts having been fully developed, it becomes our duty to render such judgment as the trial court should have rendered, and it follows from what we have said that the judgment of the trial court is reversed and judgment is here rendered in favor of appellant.

TIREY, Justice (dissenting.)

Not being able to agree with the majority opinion in this case, I hereby enter my dissent.

The material facts are fully set out in the majority opinion.

I think the controlling question presented is whether or not the collection of the $980 check by appellant was completed at such time that it changed the relationship of principal and agent, existing between the parties, to that of debtor and creditor. I think it did not, because: (1) appellant having received the check in question from the Blooming Grove Bank "for collection and credit" to the deposit account of the Blooming Grove Bank during the banking holiday, and appellant having reserved the right to charge back any item credited to the account of the Blooming Grove Bank which it could not collect, title to said check did not pass to appellant bank; (2) on March 16, 1933, the date that appellant re-opened for business and at which time appellant credited the amount of the check in question, to a regular deposit account maintained by the Blooming Grove Bank with it, it knew that under the rules and regulations in reference to the re-opening of banks after the bank holiday the Blooming Grove Bank could not be opened for business at that time; (3) on July 29, 1933, when appellant charged the deposit account of the Blooming Grove Bank with the amount of the proceeds of the check here in question and credited same on the past-due notes due it by the Blooming Grove Bank, appellant knew that all classes of banks which the government officials considered to be in proper condition to re-open at the close of said bank holiday, with reference to their former deposits and to carry on a regular banking business with reference thereto, had been permitted to re-open, and that the Blooming Grove Bank had not been permitted to re-open, with reference to its business prior to March 1, 1933. I think the forgoing undisputed facts would authorize the trial court to infer and conclude that the credit by appellant of the proceeds of said check on the indebtedness due appellant by the Blooming Grove Bank was not entered as an exercise of a debtor's privilege of offset until appellant had knowledge of insolvency and, in all events, of the restricted operations in reference to said funds of the Blooming Grove Bank; otherwise appellant would not have waited until July 29, 1933, to have so credited the proceeds of said check. (In a case tried to the court without the intervention of a jury, the appellate court will take the view of the evidence most favorable to the prevailing party. Green v. Noah, Tex.Civ.App., 24 S. W.2d 113, point 1, page 1115, writ dismissed.) I think the foregoing facts distinguish this case from the facts in United States National Bank of Galveston v. Azar, Tex.Civ.App., 102 S.W.2d 242, relied upon in the majority opinion, for the reason that the rights of the parties were determined and fixed in the Azar case before they were put upon a restricted basis, and the rule announced in that case is not applicable to the facts in the case at bar. I think that the foregoing facts bring this case within the rule announced by the United States Supreme Court in Commercial National Bank v. Armstrong, 148 U.S. 50, 13 S.Ct. 533, 534, 37 L.Ed. 363, wherein it says: "If, before the subagent parts with the money, or credits it upon an indebtedness of the agent bank to it, the insolvency of the latter is disclosed, it ought not to place the funds which it has collected, and which it knows belong to a third party, in the hands of that insolvent agent or its assignee; and, on the other hand, such insolvent agent has no equity in claiming that this money, which it has not yet received, and which belongs to its principal, should be transferred to, and mixed with, its general funds in the hands of its assignee for the benefit of its general creditors, and to the exclusion of the principal for whom it was collected. * * * No mere bookkeeping * * * could change the actual status of the parties, or destroy rights which arise out of the real facts of the transaction."

My view is that the collection of the check and crediting of the proceeds by appellant under the undisputed facts were insufficient to terminate its agency, and I therefore think that the judgment of the trial court should be affirmed. See City Bank of Sherman v. Weiss, 67 Tex. 331, 3 S.W. 299; O'Hara v. Texas National Bank, Tex.Civ.App., 299 S.W. 649, point page 651, writ refused; Commercial National Bank of Hutchinson, Kansas v. Heid Bros., Tex. Civ.App., 257 S.W. 913, writ dismissed; Beane v. First National Bank & Trust Co., 4 Cir., 92 F.2d 382, point page 385.